McDONALD *v.* FLEMING.

PARTNERSHIP — VOLUNTARY ASSOCIATION — JOINT VENTURE — IN-
TENT.

> Where complainant and 69 others joined together as a
> farmers' union, an unincorporated, voluntary organiza-
> tion, to promote the interests of its members as farmers,
> and although the association was not authorized to en-
> gage in a mercantile business, the members met and
> unanimously determined to open a store, each contribut-
> ing $10 or his note for that amount, and electing a board
> of directors to supervise the conduct of the business, and
> where none of the parties intended to form a partnership
> or to obligate themselves for more than the sum which
> they contributed, and where the union entered into a con-
> tract with the complainant to manage the store upon ten
> per cent. commission, and it was contemplated that some
> of the members should furnish money and some should
> not, that the membership would change from time to
> time, no partnership existed which would entitle com-
> plainant, one of the joint adventurers, to recover sums ad-
> vanced by him to continue the business.
> McAlvay, J., dissenting.

Appeal from Saginaw; Gage, J.  Submitted April
8, 1913.  (Docket No. 3.)  Decided December 20,
1913.  Rehearing denied June 4, 1914.

Bill by Angus J. McDonald against William Flem-
ing and others for the dissolution and winding up of
an alleged partnership.  From a decree for defend-
ants, complainant appeals.  Affirmed.

*F. E. Emerick (E. L. Beach,* of counsel), for com-
plainant.

*Weadock & Weadock (Miles J. Purcell,* of counsel),
for defendants.

OSTRANDER, J. It is pointed out by Mr. Mechem (Elements of Partnership, § 42) that the question whether a partnership has in fact been created may and often does arise, as in the case at bar, between the alleged partners themselves, when an enterprise has proved disastrous, and one or more, alleging partnership, seek to enforce contribution as partners from the others, who deny that any such relation existed. Complainant claims to have put into an enterprise $1,500 of his own money, and that he is entitled to commissions of 10 per cent. upon the amount of goods which, as manager of the enterprise, he sold. Besides this, and as an indirect result of the enterprise, the bank at Merrill holds some $2,000 of paper indorsed, some or all of it, by members of a committee. Complainant names some 69 persons who, with himself, embarked in the enterprise, and he seeks contributions from them. Forty-one of the defendants answered, denying that any partnership relation existed. As to some of the others, the bill was taken as confessed, while some were not served with process, and were brought in by publication. The circuit judge who heard the case, in an exhaustive opinion which appears in the record, analyzes the testimony, and concludes that there is no evidence of an express contract of partnership, and little or none supporting the claim that conduct of the parties was such as to create a partnership.

"I can find," he says, "no testimony in this case which indicated that any of the parties subscribing $10 contemplated or intended that there should be a partnership, and that each individual should be responsible for the entire indebtedness created by Mr. McDonald, or this so-called committee, without their individual sanction."

An examination of the record and briefs has led me to the conclusion that the circuit court was right in dismissing the bill. I shall attempt no analysis of the

testimony, but shall briefly state the reasons for my conclusion.

It must be kept in mind that complainant is not a creditor, to whom the concern has held itself out as a partnership, but that he was one of the adventurers and the manager of the business. The so-called contract of May 24, 1902, cannot, upon any theory, be held to bind, as a body, the local union of the International Farmers' Union of North America, or to bind any person not directly contracting, and those who should thereafter, upon the terms stated, join with the promoters. The writing itself is not a contract of partnership. On the contrary, it contemplates that some of the members of the union will furnish money to buy goods, and that some will not. Read with the resolution and bond, which are set out in the opinion of Mr. Justice MCALVAY, the so-called contract, unless every member of the union is bound by it, binds no particular member, unless it be those signing it, and contemplates a change of membership from time to time. It cannot be learned from the writings who the associates were. The resolution, bond, and contract, read together, contemplate only a stated contribution to the enterprise by those who should conclude to make a contribution. The construction here indicated is the practical one, adopted by those who had occasion to consider the matter at all. And if merely contributing to the fund and buying goods at the store constituted a contributor a partner, then one who came in late would be equally liable with the first contributor, and any contributor had the right to withdraw from the enterprise.

If there was no express contract for a partnership, how was a partnership created? There could be but one way, if indeed there could be, as to complainant, any way. That would be by the acts of the parties— by the joint acts of all of them, or by the acts of some of them, known and assented to by the others. I do

not find in the record evidence of any joint, or of any individual, action, the true purport and meaning of which complainant had the right to rely upon, or did rely upon, as creating a partnership. The evidence that each contributor understood that his contribution limited his liability is overwhelming. Some, a very few, of those at all interested raised money, from time to time, to carry on the business. Complainant managed the business, with some direction it is true, and himself, he says, contributed money from time to time. He must all of the time have known that, except as they made themselves personally liable, no one connected with the association intended to become, or supposed he had become, personally liable for any of its debts. It is idle to suppose that these defendants supposed, and that complainant understood, that the credit of these defendants was involved in the business.

"If parties intend no partnership, the courts should give effect to their intent, unless somebody has been deceived by their acting or assuming to act as partners; and any such case must stand upon its peculiar facts, and upon special equities." *Beecher* v. *Bush,* 45 Mich. 188, 193 (7 N. W. 785 [40 Am. Rep. 465]).

And in the same case it is said:

"Except when one allows the public or individual dealers to be deceived by the appearances of partnership when none exists, he is never to be charged as a partner unless by contract and with intent he has formed a relation in which the elements of partnership are to be found."

The case of *Carter* v. *McClure,* 98 Tenn. 109 (28 S. W. 585, 36 L. R. A. 282, 60 Am. St. Rep. 842), cited by my Brother MCALVAY, is not in point because in that case the question of partnership did not arise between associates, but between an association and creditors who were not members. My dissent from

178 MICH.—14.

the conclusion he has reached is based upon the fact that this suit is between one who claims to be a partner and his associates who deny the relation; that there is no express contract of partnership; that it was not the intention of contributing members to be associated as partners; and that complainant knew he was not dealing with a partnership.

The decree dismissing the bill must be affirmed, with costs to appellees.

STEERE, C. J., and MOORE, BROOKE, STONE, and BIRD, JJ., concurred with OSTRANDER, J.

MCALVAY, J. (*dissenting*). Complainant has appealed from a decree entered in the circuit court for Saginaw county, dismissing his bill of complaint against defendants, which was filed by him against them for the purpose of an accounting between the parties and a settlement between them of the affairs of a certain mercantile enterprise, entered into by the parties as a voluntary association, and to ascertain and decree the amount of all of its indebtedness, and also the amount claimed by him to be owing from said defendants for money advanced and services rendered by him as manager of said business.

The parties to this suit were all farmers who united together and as charter members received a charter from the International Farmers' Union of North America, and on February 24, 1902, accepted such charter and organized a local union called, "The International Farmers' Union of Merrill, Mich., No. 12." This was an unincorporated, voluntary organization to promote the interests of its members as farmers, and was not, as an organization, authorized to engage in mercantile business. Officers were elected, including a president, secretary, and treasurer, dues were collected, and official books were opened and the keeping of same undertaken. The

membership of the union at the time the mercantile venture out of which this litigation arose was undertaken included complainant and the persons who are named as defendants in this suit. The matter of establishing a store had been discussed considerably by the members of the organization, with the result that at a regular meeting of the union, held at Merrill, May 16, 1902, the said members named as defendants unanimously decided to engage in and operate a mercantile business. They elected a committee to oversee and control its affairs, and adopted the following resolution:

"International Farmers' Union of Merrill, Mich., No. 12.

"May 16th, 1902.

"JAMES BARRETT, Chairman.

"Board of Directors:
  "A. J. McDONALD,
  "THOMAS WALL,
  "GEO. HARDY,
  "JOHN A. MURPHY,
  "PATRICK O'TOOLE,
  "JOHN SHANNON.

"It is hereby resolved that we shall start a store in the following described manner: Resolved, that the said store shall be contracted by the members of the I. F. U. Resolved that we should put up the money to buy the goods. Each member to put up ten dollars in money, or a good legal note, or as much as each member may see fit. The money is given to go into the general fund of the I. F. U., providing always that if a member shall be moving away and is a good, honorable member, he shall be entitled to get his fee back in the whole worth and interest. Resolved, that we shall require the member, who is to receive the money, and run the store, to give a bond to the I. F. U. to the amount of $3,000, for the present, and it is understood that it is subject to be raised according as the committee of the I. F. U. may see fit."

After considering the matter of the selection of a place of business and the matter of entering into a

contract with some person to conduct such enterprise, these members, acting through the "board of directors" named in the foregoing resolution, agreed upon the complainant, and, pursuant to such resolution, on May 21, 1902, he furnished the following bond:

"Know all men by these presents, that we, Angus J. McDonald, principal; James Barrett, John Madden, Patrick Kalahar, Thomas Wall, Thomas Kennedy and John Murphy, of Saginaw and Midland counties, Michigan, are held and firmly bound unto International Farmers' Union Local Number 12, of Merrill, Michigan, in the sum of three thousand dollars, lawful money of the United States of America to be paid to the said International Farmers' Union, Local Number 12, of Merrill, Michigan, or to their certain attorneys, heirs, executors, administrators or assigns, to which payment well and truly to be made we bind ourselves, our heirs, executors, and administrators, and each and every of them firmly by these presents.

"Sealed with our seals, dated the 21st day of May, 1902.

"The condition of this obligation is such that the said Angus J. McDonald, as custodian of any and all funds of said association which shall in any manner come into his hands, and under his control at all times when called upon, pay out and expend the same in the manner provided by said association, and all proceeds from the same, and keep just and true account of the same at all times, and also that said Angus J. McDonald shall at all times do and perform all agreements and requirements entered into by virtue of a contract entered into with said International Farmers' Union No. 12, Local, Merrill, Michigan, then this obligation to be void, otherwise to remain in full force.

    "ANDREW (ANGUS) J. MCDONALD.   [Seal.]

    "JOHN  X̲  MADDEN.   [Seal.]
        <sup>his / mark</sup>
    "JAMES BARRETT.   [Seal.]
    "THOMAS M. KENNEDY.   [Seal.]
    "THOMAS WALL.   [Seal.]
    "JOHN A. MURPHY.   [Seal.]
    "PATRICK KALAHAR.   [Seal.]

"Signed, sealed and delivered in presence of J. O. Cunningham."

On May 24, 1902, the parties entered into the following contract:

"MERRILL, MICH., May 24, 1902.

"It is hereby contracted and agreed between the I. F. U. of Local No. 12, of the village of Merrill, and county of Saginaw, and State of Michigan, party of the first part, that they shall proceed to open up a general merchandise store in the following described manner, to wit: That the said I. F. U. has hereby agreed to furnish storeroom to the amount of what room there is in the lower floor of the building situated on the south half of lot two (2), block twenty (20), of the said village of Merrill, to be used by the said Angus McDonald for general merchandise business, free of charge, only that the said Angus J. McDonald make good any damage done by him or help, and when leaving said building yield and deliver up the same in like condition as when taken. Reasonable use and wear thereof and damage by the elements excepted. The terms and conditions of said agreement between the said I. F. U. and the said Angus J. McDonald is such that it will continue just so long as the said Angus J. McDonald shall do that what is just and honorable. And does what he can towards the building up of the said I. F. U. Furthermore the said I. F. U. agrees to put in the money to buy the goods and allow the said Angus J. McDonald 10 per cent. on the dollar for what he sells, said commission fee, subject to change in three months, according to the discretion of the board of directors belonging to and contracting the business of the said I. F. U. Furthermore it is agreed that the selling of said goods shall differ in accordance to standing of members, those members who put in the money in the general fund of the union shall be entitled to buy the goods in said store at the wholesale price with the ten per cent. commission fee allowed, and those who do not put in the money towards the general fund, shall be entitled to buy the goods according to their standing. This contract is accepted as far as written and is left open to be acted on as the committee may see fit.

"It is further agreed that Angus J. McDonald, any-

thing that was over one cent was to go to the five cents, or over six was to go to the ten cent mark; that we raise seven hundred dollars for to buy boots and shoes and dry goods for which he shall charge the I. F. U. 20 per cent. and outsiders 25 per cent. The butter and eggs all farm produce was to be handled for 5 per cent.; that sixty days from the time that A. J. McDonald notify the board of directors that he wants to quit business that the board does want the same privilege.

> "Angus J. McDonald,
> "James Barrett,
> "John A. Murphy,
> "John Shannon,
> "Thomas Wall,

"Board of Directors for the Farmers' Union Store."

And on the same day at a meeting of Union No. 12, the foregoing bond and contract were considered, accepted by the members, and the record of this meeting shows that the treasurer of Union No. 12 then turned over to the committee which was selected to control and superintend this mercantile venture, and was called a "Board of Directors," the money in his hands to the amount of $430, from moneys paid to him by the members of the Union who entered into this enterprise, and which committee gave the money to complainant. The records kept at the time also show a list of the members who had given a note or paid cash. This list gives the names of 66 members, including complainant, who each had paid either in cash or a note the sum of $10, to be used to carry on said business.

The complainant, under the direction and supervision of the board of directors, at once entered upon the active conduct of this business, and a small stock of groceries to the amount of about $600 was bought. The capital at the time was $400 in cash, and the notes of members, amounting altogether to about $600. This was all furnished by the members whose names appear on the list of full paid members. About

two months afterwards it was decided, according to
the terms of the contract between the parties, to raise
$700 to buy boots, shoes, and dry goods, which was
done by notes payable to complainant, signed by a
member of the board and indorsed by several of the
defendants, including some members of the board.
These notes were discounted, and the goods were pur-
chased at Grand Rapids, all under the direction of and
with the consent of the board of directors. This busi-
ness was called "The Farmers' Union Store," and con-
tinued under that name to be managed by complain-
ant until in 1907, when, at a meeting of the members,
it was determined to close it out and sell the balance
of the merchandise at auction. This was done, and
the receipts applied upon the indebtedness. During
all of this time this board of directors was active in
looking after the interest of the business and making
reports of its doings to the union. The business was
not successful, and a considerable amount of indebt-
edness accrued. The notes discounted at the bank
were renewed from time to time during the continu-
ance of the business. Some of the creditors were
pressing for payment, and a mortgage was given upon
the stock. It is the claim of complainant that from
time to time he advanced from his own money small
amounts for the purpose of paying debts and expenses
incurred in this business, in all to the amount of
$1,600, none of which has been paid to him. It also
appears that some of the board of directors indorsed
the notes to pay the indebtedness of the enterprise,
which were discounted at the Merrill Bank and re-
newed. Some of these notes were finally paid, either
out of the receipts of the business or by the indorsers.

The records kept by the union of its meetings and
transactions also contain the acts and doings of the
members relative to this mercantile business, includ-
ing the resolution, bond, and contract, above quoted,
and the transactions of the meetings of this board of

directors, and the reports of its doings to the meetings of the members. The record of the case is quite voluminous. It would be of no benefit to give a digest of it. There is no dispute but that the records made at the time introduced in evidence contained a truthful statement of the facts as they occurred.

The contention on the part of complainant and appellant is that, by entering into this venture or association to carry on this business with its members and the public in the manner as herein stated, each of the members individually, and all collectively, incurred a liability for all of the indebtedness of the enterprise; that the evidence in the case shows it was not the individual undertaking of the complainant, but that he acted as manager, under the direction and control of a committee called the "board of directors," appointed by the members who entered into this undertaking, and he seeks in this litigation an accounting of the affairs of this business and a determination of the entire amount of its indebtedness, including the amount due him for services and for money paid by him as above stated.

The main proposition, as to whether this was the enterprise of the complainant or the voluntary undertaking of all of these parties in a common venture depends largely upon the construction of the undisputed writings and agreements entered into, as shown by the record, which are given in this opinion.

The first step taken by the parties to this suit looking toward entering upon this venture appears in the resolution first quoted, which is taken from the records of the International Farmers' Union of Merrill, Mich., No. 12, made at the time when all these parties were present. This record is perhaps crude and inartificial, but by its terms it is clear that the intention was to "start a store;" that the building should be rented by the union, and that the members should put up the money to buy the goods; "each

member to put up $10 in money, or a good legal note, or as much as each member may see fit," and "the money is given to go into the general fund of the I. F. U.;" also that the member "who is to receive the money and run the store" should give a bond to the International Farmers' Union "in the sum of three thousand dollars for the present," subject to be increased as the committee of the International Farmers' Union may see fit. It is clearly a declaration by this body of men, individually and collectively, to establish a mercantile enterprise, and required that whoever was chosen as manager should give a bond to account for his stewardship; it is also clear that the committee, who were to manage this enterprise, called the "Board of Directors," had already been appointed. Following this, a few days later, the bond and contract with complainant were entered into and accepted by the members who went into this enterprise, consisting at least of 66 members, including the complainant; that the treasurer of the union thereupon turned over funds in his hands to complainant. A condition of the bond shows that complainant as "custodian of any and all funds of the association which shall in any manner come into his hands," was to pay out and expend the same in the manner provided by said association and keep true account of the same, and to do and perform all the agreements and requirements entered into by virtue of the contract with this Farmers' Union No. 12, which was named as obligee in the bond.

The initial agreement in the contract entered into between the parties and under which they proceeded for the entire term during which this business was carried on is, on the part of this local union as of the first part, "that they shall proceed to open up a general merchandise store, in the following described manner." A further agreement is as follows:

"Furthermore, the said I. F. U. agrees to put in the money to buy the goods and allow the said Angus J. McDonald ten per cent. on the dollar for what he sells, said commission fee, subject to change in three months, according to the discretion of the board of directors belonging to and contracting the business of said I. F. U."

And, further, "that we raise $700 for to buy boots and shoes and dry goods." Also a provision for notice of sixty days in case either party desired to withdraw from the contract. The contract was executed by complainant and four of the defendants, who signed as "Board of Directors for the Farmers' Union Store." The only reasonable construction of this resolution, bond, and contract is that this was a joint enterprise of these members for the purpose of entering into a mercantile business, and that they employed complainant as manager of this business for them, under the direction and control of the board of directors selected by them. The testimony of the chairman and three other members of this board of directors is in entire accord with this construction.

The testimony relied upon by the defendants in support of their contention that no partnership relations existed between the members is to the effect that nothing was said at the time they undertook to establish this store as to any liability which they would assume by reason of their connection with its operations. There is no denial but that they were parties to the undertaking, and that it was intended to establish this store. The crucial question in the case is a question of law and not of fact; that is to say, whether the acts and doings of these defendants in instituting this mercantile enterprise and carrying on the same as herein stated created a liability against them, and each of them, to pay the indebtedness which accrued in the conduct of this business the same as in a partnership.

This was a voluntary association to carry on a mercantile business with its members and the public generally for profit. They agreed to sell to members at 10 per cent. above cost, and to sell to the public at 25 per cent. above cost. It was understood that for butter and eggs the store would pay cash at going market rates. It was expected that profits would be realized from the business to go into the general fund. The testimony of defendants themselves shows that they did buy goods from the store cheaper than elsewhere, and the record shows that most of them sold butter and eggs to the store for cash at prices which were profitable.

It is claimed on the part of defendants that because of the fact that goods were bought by complainant in his own name, and also that a chattel mortgage was given by him on the stock in the store to creditors, and that he borrowed money in his own name, this was his individual enterprise. As to the chattel mortgage, the record shows that the chairman of the board of directors of the store knew of this at the time, and advised McDonald to give the mortgage. The fact that he borrowed money with which to pay indebtedness was well known to the board of directors. The money paid by the members and given to complainant for the purpose of buying goods was used by him only for that purpose, and, when making the first purchase, he stated to the seller that it was a stock for this farmers' union store. It was at the seller's instance that the account was made out in his name. This stock all went into the store, and was examined and approved by the board of directors, as were all goods which came into this store during the time it was being conducted, and the record shows reports of the board of directors from time to time to the members at their meeting as to stock purchased and other matters incident to the business. The directors testified that complainant always followed the

instructions of the board, and always reported what he had done in the conduct of the business. These transactions having been approved and ratified by this association, through its committee, did not in any manner contradict or disprove the overwhelming evidence in the case that this was a voluntary association of these defendants. The law is well settled that the liability of the members of voluntary associations for commercial purposes, and operated for pecuniary profit, is the same as that of partners, and such associations in that respect are considered as partnerships. 25 Am. & Eng. Enc. Law (2d Ed.), pp. 1130, 1131 and cases cited.

This indebtedness incurred by complainant in purchasing goods and paying therefor under his contract in the conduct of the business cannot be distinguished from the indebtedness to any other creditor. The individual members, therefore, are liable for all the indebtedness of such association which may arise in the prosecution of the business engaged in, and this is so whether or not in entering the undertaking the members contemplated a partnership, and each supposed all he risked in the enterprise was the amount paid in by him. *Farnum* v. *Patch,* 60 N. H. 294 (49 Am. Rep. 313); *Hodgson* v. *Baldwin,* 65 Ill. 532; 25 Am. & Eng. Enc. Law (2d Ed.), pp. 1136, 1137, and cases cited; *Carter* v. *McClure,* 98 Tenn. 109 (28 S. W. 585, 36 L. R. A. 282, 60 Am. St. Rep. 842), and cases cited.

In this last case the court said:

"It is, no doubt, true that the defendants did not contemplate a partnership, and each supposed that he was simply taking a share in the joint stock enterprise, in which all he risked was the small sum paid for such share, yet it is for the law to determine, on the facts already given, whether a partnership was created, with all its attending liabilities."

It follows that the complainant should be entitled

to a decree in his favor, according to the prayer of the bill. The decree of the circuit court should be reversed, and the case remanded to the circuit court for the purpose of an accounting, to ascertain and determine the amount due and owing to complainant from defendants for services rendered and for money furnished by him in the conduct of the business, upon which a decree may be entered in his favor against defendants, with costs of both courts, on such accounting to be taxed.

KUHN, J., did not sit.