Michigan Supreme Court
Lansing, Michigan 48909

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

FILED MARCH 26, 2002

DAVID G. BYKER,

    Plaintiff-Appellant,

v                                   No. 116380

THOMAS J. MANNES,

    Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

MARKMAN, J.

This Court granted leave in this case to consider whether Michigan partnership law, MCL 449.6(1), requires a subjective intent to form a partnership or merely an intent to carry on, as co-owners, a business for profit. The trial court found that a partnership is formed by persons whose intent is to carry on as co-owners a business for profit, regardless of their subjective intention to be partners. On the basis of this definition, the court determined that a partnership existed. The Court of Appeals, in a split opinion, reversed,

finding that no partnership existed because of, among other factors, the lack of evidence of the parties' subjective intent to form a partnership. We disagree with the definition of partnership applied by the Court of Appeals. In determining whether a partnership exists, the focus is not on whether individuals subjectively intended to form a partnership, that is, it is unimportant whether the parties would have labeled themselves "partners." Instead, the focus is on whether individuals intended to jointly carry on a business for profit within the meaning of the Michigan Uniform Partnership Act, MCL 449.1 *et seq.*, regardless of whether they subjectively intended to form a partnership. Accordingly, we reverse the Court of Appeals decision and remand this matter for further consideration.

## I. Facts and Proceedings

This case arises out of an alleged partnership between plaintiff David Byker and defendant Tom Mannes. In 1985, plaintiff was doing accounting work for defendant. The two individuals talked about going into business together because they had complementary business skills—defendant could locate certain properties because of his real estate background and plaintiff could raise money for their property purchases. Indeed, the parties stipulated the following:

> [T]he Plaintiff . . . and Defendant . . .
> agreed to engage in an ongoing business enterprise,

2

to furnish capital, labor and/or skill to such enterprise, to raise investment funds and to share equally in the profits, losses and expenses of such enterprise. . . . In order to facilitate investment of limited partners, Byker and Mannes created separate entities wherein they were general partners or shareholders for the purposes of operating each separate entity.

Over a period of several years, the parties pursued various business enterprises. They have stipulated that the following business entities were created during this time:

    a.    A 100% general partner interest in M & B Properties Limited Partnership, a Michigan limited partnership, which limited partnership owns a 50% partnership interest in Hall Street Partners, a Michigan partnership.

    b.    A 100% general partner interest in M & B Properties Limited Partnership-II, a Michigan limited partnership, which limited partnership owns a 50% partnership interest in Breton Commercial Properties, a Michigan partnership.

    c.    A 66-2/3% of the issued and outstanding shares of the common stock of JTD Properties, Inc., a Michigan corporation, which is the general partner of JTD Properties Limited Partnership I, a Michigan limited partnership, and which is also the general partner of M & B Properties Limited Partnership-III, a Michigan limited partnership. The interest was later increased to 100% when John Noel left the partnership.

    d.    A 66-2/3% of the issued and outstanding shares of the common stock of Pier 1000 Ltd., a Michigan corporation. The interest was later increased to 100% when John Noel left the partnership.

    e.    A 66-2/3% general partner interest in BMW Properties, a Michigan partnership.

With regard to these entities, the parties shared equally in

3

the commissions, financing fees, and termination costs. The parties also personally guaranteed loans from several financial institutions.

The business relationship between the parties began to deteriorate after the creation of Pier 1000 Ltd., which was created to own and manage a marina. Shortly after the creation of Pier 1000 Ltd., the marina encountered serious financial difficulties. To address these difficulties, the parties placed their profits from M & B Limited Partnership II into Pier 1000 Ltd. and borrowed money from several financial institutions.

Eventually, defendant refused to make any additional monetary contributions. Plaintiff, however, continued to make loan payments and incurred accounting fees on behalf of Pier 1000 Ltd., as well as on behalf of other business entities. Plaintiff also entered into several individual loans for the benefit of Pier 1000 Ltd. These business transactions were performed without defendant's knowledge.

The marina was eventually returned to its previous owners in exchange for their assumption of plaintiff's and defendant's business obligations. At this point, the business ventures between plaintiff and defendant ceased.

Plaintiff then approached defendant with regard to equalizing payments as a result of the losses incurred from

4

the various entities. Defendant testified that this was the first time that he had received notice from plaintiff concerning any outstanding payments, and that he was "absolutely dumbfounded" by plaintiff's request for money.

After unsuccessfully seeking reimbursement from defendant, plaintiff filed suit for the recovery of the money on the basis that the parties had entered into a partnership.[1] Specifically, plaintiff asserted that the obligations between him and defendant were not limited to their formal business relationships established by the individual partnerships and corporate entities, but that there was a "general" partnership underlying all their business affairs. In response, defendant asserted that he merely invested in separate business ventures with plaintiff and that there were no other understandings between them.

The case proceeded to a bench trial where the trial court determined that the parties had created a general partnership.[2] The court observed that, although Michigan had

---

[1] The parties stipulated that the alleged partnership was never memorialized in a written partnership agreement, had no formal name, no tax identification number, and no income tax filings.

[2] The trial court and the Court of Appeals termed the alleged partnership at issue a "super" partnership. The trial court defined such a partnership as one that, although not entailing a formal business relationship by the parties, is a "general partnership between them underlying all of their

(continued...)

5

not formally adopted § 202 of the 1994 Uniform Partnership Act (1994 UPA),[3] the law in Michigan is that parties must merely have an intent to carry on a business for profit, not a subjective intent to create a partnership. On this basis, the trial court concluded that the parties had maintained a business relationship that constituted a partnership. It stated:

> Having weighed the credibility of the witnesses, principally plaintiff and defendant, we conclude that they began their relationship with a general agreement that they were partners and would share profits and losses equally. Whether understood or not they had a general or super partnership. The evidence supports that both understood it.

Defendant appealed to the Court of Appeals, which reversed. Unpublished opinion per curiam, issued February 1, 2000 (Docket No. 205266). In part, the Court of Appeals stated that the trial court incorrectly relied on § 202 "for the proposition that 'the association of two or more persons to carry on as co-owners of business for profit forms a partnership, *whether or not the persons intend to form a*

---

[2](...continued)
business affairs." Because the statutory and case law merely define a "partnership," this Court will simply use that term without embellishment.

[3] The Uniform Partnership Act, originally adopted in 1914, is a statement of partnership law drafted by the National Conference of Commissioners on Uniform State Laws and is intended to contribute to the uniformity of state laws.

*partnership.'"* Slip op at 2 (emphasis in original). Further, it stated that "[t]he absence of intent to form a partnership contradicts the established law in this state that the *mutual* intent of the parties is of *prime* importance in ascertaining whether a partnership exists." *Id.* (emphasis in original). Upon review of the facts, the Court of Appeals determined that the parties clearly did not intend to form a partnership.[4] *Id.* at 3.

Judge White dissented. She stated that, although Michigan had not adopted § 202, the trial court correctly recognized that Michigan's existing definition of partnership was consistent with that provision. White, J., concurring in part and dissenting in part, slip op at pp 2-3. Pursuant to Michigan law, "intent of the parties is determinative, whether or not they attached the term 'partnership' to that intent." *Id.* at 2. Thus, in Judge White's view, "[t]here is no necessity that the parties attach the label 'partnership' to their relationship as long as they in fact both mutually agree to assume a relationship that falls within the definition of a partnership." *Id.* at 3. We agree with Judge White's reasoning.

---

[4] A significant factor in the Court of Appeals finding was the fact that the parties were unaware that they had formed a partnership until nine years after the parties entered into their informal relationship.

7

## II. STANDARD OF REVIEW

Whether Michigan partnership law, MCL 449.6(1), requires a subjective intent to form a partnership or merely an intent to carry on as co-owners a business for profit is a question of law. This Court reviews questions of law under a de novo standard of review. *Kelly v Builders Square, Inc*, 465 Mich 29, 34; 632 NW2d 912 (2001).

## III. DISCUSSION

### A. UNIFORM PARTNERSHIP ACTS

In 1917, the Michigan Legislature drafted the Michigan Uniform Partnership Act. 1917 PA 72. In this act, a partnership was defined as "an association of two [2] or more persons to carry on as co-owners a business for profit . . . ." *Id.* at § 6, codified in 1929 CL 9846. Over the years, the definition has remained essentially constant.[5] At present, partnership is defined as "an association of 2 or more persons, which may consist of husband and wife, to carry on as co-owners a business for profit . . . ." MCL 449.6(1). This definition, as well as its predecessors, was modeled after the definition of partnership set forth in the 1914 UPA. See MCLS and MCLA 449.6 (Historical Notes); 1929 CL 9841; 1948 CL

---

[5] For example, the second statutory definition stated that "a partnership is an association of 2 or more persons, which may include husband and wife, to carry on as co-owners a business for profit . . . ." 1948 CL 449.6(1).

8

449.1.    In 1914, the UPA had defined a partnership as "an association of two or more persons to carry on as owners a business for profit."  Uniform Partnership Act of 1914, § 6. In construing § 6, courts had "universal[ly]" determined that a partnership was formed by "the association of persons whose intent is to carry on as co-owners a business for profit, regardless of their subjective intention to be 'partners.'"  See Uniform Partnership Act of 1994, § 202, Comment 1.

In 1994, however, the UPA definition of partnership was amended by the National Conference of Commissioners.  The amended definition stated that "the association of two or more persons to carry on as co-owners a business for profit forms a partnership, *whether or not the persons intend to form a partnership*."  Section 202 (emphasis added).  Although the commissioners were apparently satisfied with the existing judicial construction of the definition of partnership, the commissioners added the new language "whether or not the persons intend to form a partnership" in order to "codif[y] the universal judicial construction of UPA Section 6(1) that a partnership is created by the association of persons whose intent is to carry on as co-owners a business for profit, regardless of their subjective intention to be 'partners.'"  Section 202 (Comment 1).  The commissioners emphasized that "[n]o substantive change in the law" was intended by the

9

amendment of § 6.  *Id.*  To date, Michigan has not adopted the amended definition of partnership.

## B.  MCL 449.6(1)

Although Michigan has not adopted the amended definition of partnership as set forth in § 202 of the Uniform Partnership Act of 1994, we believe nonetheless that MCL 449.6 is consistent with that amendment.  As stated numerous times by this Court, it is essential that this Court discern and give effect to the legislature's intent.  In doing so, we must examine the language contained within the applicable statutory provision.  If the language is clear and unambiguous, this Court will presume that the Legislature intended the meaning plainly expressed and will enforce the statute as written. *Wickens v Oakwood Healthcare Systems*, 465 Mich 53, 60; 631 NW2d 686 (2001).

As already noted, a partnership in Michigan is statutorily defined as "an association of 2 or more persons, which may consist of husband and wife, to carry on as co-owners a business for profit . . . ."  MCL 449.6(1).  That is, if the parties associate themselves to "carry on" as co-owners a business for profit, they will be deemed to have formed a partnership relationship regardless of their subjective intent to form such a legal relationship.  The statutory language is devoid of any requirement that the individuals have the

10

subjective intent to create a partnership. Stated more plainly, the statute does not require partners to be aware of their status as "partners" in order to have a legal partnership.

Further, the Court of Appeals emphasis upon subjective intent as being of "prime importance in ascertaining whether a partnership exists," slip op at 2, belies the absence in the statute of even a reference to such "intent" as a factor for consideration. Indeed, MCL 449.7, entitled "Rules for determining existence of a partnership," contains a listing of items to be specifically considered in this process and the subjective intent of the parties is conspicuously absent.[6] It

---

[6] MCL 449.7 provides, in relevant part:

(1) [P]ersons who are not partners as to each other are not partners as to third persons;

(2) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property;

(3) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived;

(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:

(continued...)

11

is a well-established rule of statutory construction that this Court will not read words into a statute. *Omelenchuk v City of Warren*, 461 Mich 567, 575; 609 NW2d 177 (2000). We decline here to rewrite or embellish the statute.

### C. Common Law

Although the provisions of MCL 449.6(1) set forth the standard for determining whether a partnership has been formed, we note that the Court of Appeals relied heavily on several of our earlier cases that, in the Court's view, focused this inquiry on whether the parties mutually intended to form a partnership. However, upon further examination of these cases, we respectfully disagree with the Court of Appeals. Rather, we find that, despite language that could potentially lead to such a conclusion, these cases, in fact, contemplated an examination of all the parties' acts and conduct in determining the existence of a partnership.

---

[6](...continued)

   (a) As a debt by installments or otherwise,

   (b) As wages of an employee or rent to a landlord,

   (c) As an annuity to a widow or representative of a deceased partner,

   (d) As interest on a loan, though the amount of payment vary with the profits of the business,

   (e) As the consideration for the sale of the good-will of a business or other property by installments or otherwise.

When the Legislature initially drafted MCL 449.6(1) the definition of partnership was well established in our common law, and is consistent with the interpretation that we give it today.  See *Beecher v Bush,* 45 Mich 188, 193-194; 7 NW 785 (1881)*; McDonald v Fleming*, 178 Mich 206, 209; 144 NW 519 (1913).[7]  Indeed, judicial interpretations of the Michigan Uniform Partnership Act have regularly referenced the common-law definition.  See, e.g.*, Runo v Rothschild*, 219 Mich 560, 564-565; 189 NW 183 (1922) (citing the definition of a partnership from the statute and referencing the common-law test of partnership found in *Beecher, supra*); *Van Stee v Ransford*, 346 Mich 116, 133; 77 NW2d 346 (1956) (stating that "'in the absence of an express agreement, . . . acts and conduct in relation to the business are the test to be used in determining if a partnership exists.'").

---

[7] Additionally, there is some statutory evidence that the Legislature intended to maintain this definition.  Subsection 2 of MCL 449.6 provides that

> any association formed under any other statute of this state, or any statute adopted by authority, other than the authority of this state, is not a partnership under this act, *unless such association would have been a partnership in this state prior to the adoption of this act . . . .* [Emphasis added.]

This provision, although applicable to organizations formed under statutes *other* than the Michigan Uniform Partnership Act, implies that the common-law definition of a partnership is to assist in determining what constitutes a partnership.

13

Pursuant to this common law, individuals would be found to have formed a partnership if they acted as partners, regardless of their subjective intent to form a partnership. Speaking through Justice Cooley, this Court stated the following with regard to the law of partnership:

> If parties intend no partnership the courts should give effect to their intent, unless somebody has been deceived by their acting or assuming to act as partners; and any such case must stand upon its peculiar facts, and upon special equities.
>
> It is nevertheless possible for parties to intend no partnership and yet to form one. If they agree upon an arrangement which is a partnership in fact, it is of no importance that they call it something else, or that they even expressly declare that they are not to be partners. The law must declare what is the legal import of their agreements, and names go for nothing when the substance of the arrangement shows them to be inapplicable. [*Beecher, supra* at 193-194 (emphasis added); see also *McDonald, supra*.]

Justice Cooley's statements clearly express that, in determining the existence of a partnership, the focus of inquiry is on the parties' actual conduct in their business arrangements, as opposed to whether the parties subjectively intend that such arrangements give rise to a partnership. Thus, one analyzes whether the parties acted as partners, not whether they subjectively intended to create, or not to create, a partnership. The Court of Appeals in the instant case rejected the trial court's reliance on the proposition that a partnership may be created where persons carry on as

co-owners a business for profit regardless of their subjective intent to be partners. The Court emphasized that "[t]he absence of intent to form a partnership contradicts the established law in this state that the *mutual* intent of the parties is of *prime* importance in ascertaining whether a partnership exists." Slip op. at 2 (emphasis in original). However, the cases relied on by the Court of Appeals do not hold that, standing alone, the absence of subjective intent to create a partnership is determinative of the question of the existence of a legal partnership.[8] Rather, it is one factor to consider in deciding if the parties did, in fact, carry on as co-owners a business for profit.

This proposition has been consistently adhered to by this Court, although our decisions on occasion have utilized imprecise language and, therefore, created the possibility for some confusion. For example, in *Morrison v Meister*, 212 Mich 516, 519; 180 NW 395 (1920), this Court first began to refer to "the intention of the parties[as being] of prime importance [in determining the existence of a partnership]." Unfortunately, this language read out of context could lead

---

[8] Although Justice Cooley stated that the "doubtful" case must be resolved in favor of "intent," warning that "otherwise we should 'carry the doctrine of constructive partnership so far as to render it a trap to the unwary,'" *Beecher, supra* at 194, this does not mean that the *absence* of subjective intent is dispositive to whether a partnership exists.

15

one to the conclusion that the intent referred to was not the intent to carry on as co-owners a business for profit, but the intent to form a legal partnership per se. That this misunderstanding should be avoided can be seen by the fact that *Morrison*, even while stating "that there was no intention on the part of the defendants to form a partnership," went on to clarify that statement by predicating its holding on the fact that very few of the other indicia of a partnership were present. *Id.* That is, the Court surveyed generally the parties' actions and intentions to essentially conclude that they had not wanted to, nor did they in fact, carry on as co-owners a business for profit. Thus, *Morrison* considered far more than merely whether the parties subjectively labeled themselves partners. Likewise, in *Lobato v Paulino*, 304 Mich 668, 675-676; 8 NW2d 873 (1943), there is similarly imprecise language. In *Labato*, this Court observed that "[t]he factual situation now before us is quite like that in *Morrison v Meister* . . . where this court said: 'the record is convincing that there was no intention on the part of the defendants to form a partnership." *Id.* at 676-677. The Court, as in *Morrison*, went on to find that "[t]he vagueness of the whole arrangement . . . renders it improbable that any partnership arrangement was mutually agreed upon by the parties." *Id.* at 677. Plainly stated, *Lobato* turned on the fact that the

16

business arrangements of the parties, as well as their intent, afforded no evidence that they wished to jointly carry on as co-owners a business for profit. See also *Block v Schmidt*, 296 Mich 610, 616; 296 NW 698 (1941); *Moore v DuBard*, 318 Mich 578, 593-594; 29 NW2d 94 (1947).

In addition, we note that there are numerous other cases that expressly indicate that the focus of inquiry is on the parties' intent to "carry on as co-owners a business for profit," MCL 449.6(1), and on whether that intent is manifest in the actual agreement formed. For example, in *Runo v Rothschild*, *supra* at 564, this Court identified the partnership statute and stated that "[w]hile the law has always considered the partnership relation one of contract and intention, *it makes determination of the status of the parties from their agreement, and draws their intention from their acts.*" (Emphasis added.) The Court concluded that the "agreement between [the plaintiff] and the defendant constitut[ed] them co-partners . . . ." *Id.* at 565.

Similarly, in *Klein v Kirschbaum*, 240 Mich 368; 215 NW 289 (1927), this Court determined that the relevant evidence did not establish a partnership relation. In so concluding, the Court focused on the parties' intent to carry on as co-owners a business for profit. Specifically, it stated:

17

> Have they established the fact of their association with Kirschbaum under an agreement to carry on as co-owners the tailoring business for mutual profit? As between plaintiffs and Kirschbaum the question of whether there was a partnership depended upon intention mutually entertained to be established by facts and circumstances. [*Id*. at 371.]

In *Gleichman v Famous Players-Lasky Corp*, 241 Mich 266, 272; 217 NW 43 (1928), this Court again referenced the partnership statute, "appl[ied] the law as thus stated," and concluded that the "indicia" of a partnership were absent. Further, in *Western Shoe v Neumeister*, 258 Mich 662, 665; 242 NW 802 (1932), the Court stated, on the matter of ascertaining the existence of a partnership, that "[i]f a partnership existed, it must have been created by consent of the parties either orally expressed *or by conduct in connection with the business sufficient in law to constitute such a relation*." (Emphasis added.) Similarly, in *Van Stee*, *supra* at 133, the Court noted that, absent an express agreement, "'the test to be used in determining if a partnership exist[s]'" is to examine the "acts and conduct in relation to the business." Quoting *Western Shoe*, *supra*.

Accordingly, we believe that our prior case law has, consistent with MCL 449.6(1), properly examined the requirements of a legal partnership by focusing on whether the parties intentionally *acted* as co-owners of a business for

18

profit, and not on whether they consciously intended to create the legal relationship of "partnership." We emphasize, however, that any future development of case law regarding partnership in our state must take place in accord with the provisions of the Michigan Partnership Act.

### IV. CONCLUSION

With the language of the statute as our focal point, we conclude that the intent to create a partnership is not required if the acts and conduct of the parties otherwise evidence that the parties carried on as co-owners a business for profit. MCL 449.6, 449.7. Thus, we believe that, to the extent that the Court of Appeals regarded the absence of subjective intent to create a partnership as dispositive regarding whether the parties carried on as co-owners a business for profit, it incorrectly interpreted the statutory (and the common) law of partnership in Michigan.

Pursuant to MCL 449.6(1), in ascertaining the existence of a partnership, the proper focus is on whether the parties intended to, and in fact did, "carry on as co-owners a business for profit" and not on whether the parties subjectively intended to form a partnership. To the extent that *Morrison* and its progeny are read to suggest that the absence of subjective intent to form a partnership is dispositive of the question whether a partnership exists, we

19

believe that such interpretations are in error.[9]

Accordingly, we remand this matter to the Court of Appeals for analysis under the proper test for determining the existence of a partnership under the Michigan Uniform Partnership Act.

CORRIGAN, C.J., and CAVANAGH, WEAVER, KELLY, TAYLOR, YOUNG, and MARKMAN, JJ., concurred.

---

[9] We emphasize that while intent may be of "prime importance in considering whether a partnership exists," *Lobato, supra* at 675, the focus of that intent is not on whether the parties intended to form a partnership, but on whether the parties intended to carry on as co-owners a business for profit, and whether they in fact did carry on such a business.

20