# STATE OF MICHIGAN

# COURT OF APPEALS

MARTIN HERMAN,

        Plaintiff-Appellee,

v

JEFFREY W. PICKELL and KALEIDOSCOPE
BOOKS AND COLLECTIBLES,

        Defendant-Appellant.

UNPUBLISHED
April 12, 2016

No. 325920
Washtenaw Circuit Court
LC No. 13-000643-NZ

Before: BOONSTRA, P.J., and WILDER and METER, JJ.

PER CURIAM.

Defendant appeals by right the judgment of the trial court, following a bench trial, in favor of plaintiff in the amount of $88,000, plus $255 in costs and $10,800 in attorney fees. The trial court determined that plaintiff and defendant had formed a valid partnership and that plaintiff remained a 10% partner in defendant's business, entitling plaintiff to 10% of the business's yearly net profits for the previous 6 years[1] and 10% of the value of the business's inventory. We affirm the trial court's determination of the existence of a partnership, but vacate the award of damages and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant was the sole proprietor of a business, Kaleidoscope Books and Collectibles, located in Ann Arbor, Michigan. Plaintiff met defendant at some point in the late 1990's while plaintiff's daughter was a student at the University of Michigan. Plaintiff frequented defendant's store due to his interest in collectibles and other products that defendant sold. The parties each claimed that the other was the first to initiate the suggestion of going into business together. Plaintiff claimed that defendant gave him a document prepared for potential investors, and introduced this document at the bench trial on this matter. However, defendant denied that he had prepared the document. Nonetheless, both parties seemed to agree that at some point they came to an understanding whereby plaintiff would provide defendant with $50,000 in return for a

---

[1] The six-year timeline appears to have been based on the general statute of limitations for other personal actions. MCL 600.5813.

-1-

10% interest in defendant's business. Although defendant at times characterized this tender of $50,000 as a "loan," he also testified to his understanding that he and plaintiff were business partners initially and that he considered the partnership dissolved. Plaintiff testified that by early 1998 he had paid defendant the full $50,000 in a series of checks that ranged from $3,000 to $5,000 per check. Plaintiff acknowledged that he was unable to locate records of every check given to defendant. Defendant testified that he received some money from plaintiff, and while he acknowledged that it was possible that he had received the full $50,000, he contended that he actually received somewhere between $19,000 and $25,000. Defendant testified that he lost the money that plaintiff had given him, to a carpenter he had hired to build out a new space for the store; the carpenter ultimately did not complete the work and was terminated by defendant.

No writing existed between the parties before a February 1, 1998 letter from defendant to plaintiff that stated that plaintiff was "a ten percent (10%) silent partner in the business," that plaintiff was "not responsible for any business decisions" but that "his expertise in business will be sought after in an advisory capacity," that plaintiff's 10% interest "entitles him to ten percent (10%) of the monthly net earnings," and that if the business was sold or dissolved plaintiff "is entitled to ten percent (10%) of the business assets after all business expenses are deducted in full." Plaintiff testified that he never received a single profit check from defendant who, when asked, would simply tell plaintiff that there were no profits.

Defendant sent a letter to plaintiff dated June 25, 1998 that stated that plaintiff would "retain 10% ownership . . . until the $50,000 loan is completely repaid," that $1,000 monthly payments would begin in January of 1999, that "[p]ayments will continue until the loan has been repaid," and that "[a]t that time," plaintiff's "interest in Kaleidoscope is satisfied and the 10% partnership is dissolved." On November 15, 1998, plaintiff wrote defendant a letter outlining terms for repayment that would begin in January 1999 and that described the amount owed to plaintiff as both an "investment" and a "loan." The letter also stated that plaintiff would hold his "10% interest in Kaleidoscope until the final or 50th payment is received." Plaintiff testified that any characterization in this letter of the amount owed, as a loan, was a mistake. Plaintiff stated that he had received between $20,000 and $25,000 from defendant but that, not having received the full amount, he still considered himself a 10% partner.

The parties agreed that, at some point, and with defendant's consent, plaintiff came and took some items from the store, although the parties' description of the specifics of this event varied greatly. Plaintiff described it as a small gift that amounted to one box with a value of less than $100. Defendant described it as an invitation by him to plaintiff to take "carte blanche" anything from the store and that plaintiff spent 8 to 10 hours loading "box after box" of merchandise into a minivan.

At some point, defendant moved the business to a different location. Plaintiff claimed that defendant told him that Kaleidoscope was going out of business, but defendant denied this. The parties did not have any contact between 2001 and 2012. Plaintiff contacted defendant in 2013, after preparing his taxes for the preceding year, because his accountant suggested to him that he would need to try to collect on the investment before writing it off as a loss. Defendant did not respond to plaintiff's attempts to contact him, and this litigation followed.

Plaintiff filed suit on June 25, 2013, alleging counts for breach of contract, fraud, unjust enrichment, promissory estoppel, violation of the uniform partnership act, MCL 449.1 *et seq*, and for an accounting. The complaint alleged that a partnership had been formed, that "the agreement was reduced to [a] writing" that was drafted and signed by defendant, and that "a copy of the agreement is attached." However, no attachment was appended to the complaint. Defendant filed a motion for summary disposition, arguing in part that the statute of limitations barred all of plaintiff's claims, and also arguing that summary disposition should be granted on plaintiff's uniform partnership act and accounting claims because those claims were based on a written instrument that was not attached to the complaint as required by MCR 2.113(F). At the motion hearing, plaintiff made clear that the document that should have been attached was defendant's February 1, 1998 letter. Based on the statute of limitations, the trial court granted summary disposition in favor of defendant on all counts except the uniform partnership act and accounting claims. With respect to those two claims, the court stated that because defendant had drafted the document at issue, plaintiff's failure to comply with MCR 2.113(F) did not require dismissal. The trial court then entered a written order stating "that the issues remaining for the Court are dissolution, damages and accounting."

The trial court[2] subsequently denied defendant's second motion for summary disposition, which was again premised on plaintiff's failure to comply with MCR 2.113(F). The case proceeded to a bench trial at which plaintiff and defendant were the only two witnesses. Defendant's tax returns for 2009, 2010, 2011, and 2012 were admitted into evidence. Each return included a Schedule C form that showed net profit for defendant's business for those four years to be $15,342, $15,268, $10,315, and $14,434, respectively. At the conclusion of the trial, the trial court found that plaintiff had invested $50,000 in defendant's business in exchange for a 10% interest in the business and that plaintiff continued to hold this interest at the time of trial. The trial court found that defendant's "yearly net profits" were at least $80,000 for the past 6 years, of which 10% or $48,000 belonged to plaintiff. It also found that the value of the business's inventory was at least $600,000, of which 10% belonged to plaintiff. The trial court added these amounts and subtracted $20,000 that it found defendant had paid (approximately) to plaintiff. The trial court issued a written opinion and order memorializing these findings on December 26, 2014, and entered a judgment in favor of plaintiff in the amount of $88,000.

This appeal followed. On appeal, defendant argues that the trial court erred in finding that a partnership existed, that the trial court erred in denying defendant's motion for summary disposition based on plaintiff's failure to comply with MCR 2.113(F), and that the trial court erred in its calculation of damages.

## II. STANDARD OF REVIEW

"The determination of whether a partnership exists is a question of fact." *Miller v City Bank & Trust Co*, 82 Mich App 120, 123; 266 NW2d 687 (1978). The trial court's factual

---

[2] Although the reason for the re-assignment is not clear, the case was assigned to a different trial judge following the partial grant and partial denial of defendant's first motion for summary disposition.

findings are reviewed for clear error. *Killips v Mannisto*, 244 Mich App 256, 258; 624 NW2d 224 (2001). Questions of law are reviewed de novo. *Thomas v City of New Baltimore*, 254 Mich App 196, 201; 657 NW2d 530 (2002). This Court reviews the trial court's grant of summary disposition pursuant to MCR 2.116(C)(8) "de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "[I]nterpretation of a court rule, like a matter of statutory interpretation, is a question of law that this Court reviews de novo." *CAM Constr v Lake Edgewood Condo Ass'n*, 465 Mich 549, 553; 640 NW2d 256 (2002). Finally, we "review[] the trial court's determination of damages following a bench trial for clear error." *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 513; 667 NW2d 379 (2003). "The clear error standard provides that factual findings are clearly erroneous where there is no evidentiary support for them or where there is supporting evidence but the reviewing court is nevertheless left with a definite and firm conviction that the trial court made a mistake." *Hill v City of Warren*, 276 Mich App 299, 308; 740 NW2d 706 (2007).

## III. EXISTENCE OF PARTNERSHIP

MCL 449.6(1) states that "[a] partnership is an association of 2 or more persons . . . to carry on as co-owners a business for profit." "The determination of whether a partnership exists is a question of fact and . . . [t]he burden of proof to show a partnership is on the one alleging the partnership." *Miller*, 82 Mich App at 123. "For a partnership to exist, it must be shown by an agreement, since it is the intention of the parties that is of prime importance in ascertaining the existence of a partnership." *Le Zontier v Shock*, 78 Mich App 324, 333; 260 NW2d 85 (1977). In *Byker v Mannes*, 465 Mich 637, 644-653; 641 NW2d 210 (2002), aff'd 469 Mich 881 (2003), our Supreme Court interpreted MCL 449.6 as providing that "if the parties associate themselves to 'carry on' as co-owners a business for profit, they will be deemed to have formed a partnership relationship regardless of their subjective intent to form such a legal relationship." 465 Mich at 646. The Supreme Court essentially held that a partnership could be formed even if the parties were not "aware of their status as 'partners.'" *Id*. In so concluding, the Supreme Court stated that "in ascertaining the existence of a partnership, the proper focus is on whether the parties intended to, and in fact did, 'carry on as co-owners a business for profit' and not whether the parties subjectively intended to form a partnership." *Id*. at 653.

Here, the trial court determined that a partnership existed based on its factual finding that plaintiff had given defendant the $50,000 in exchange for a partnership interest as opposed to a loan, as memorialized in the February 1, 1998 letter. The trial court further determined that the parties had agreed, as memorialized by the June 25, 1998 and November 15, 1998 letters, that defendant could repurchase plaintiff's partnership interest by repaying the initial $50,000 investment, but that this agreement was never effectuated. Implicit in this determination, although not directly stated, is the trial court's finding that defendant's claim that plaintiff had filled a minivan with valuable merchandise in satisfaction of the buyout agreement was not credible.

We find no error in the trial court's determination. Defendant argues that the trial court drew an improper inference that plaintiff's right to receive a share of the profits was evidence that he was a partner in a business. Defendant relies on MCL 449.7(4), which states in pertinent part:

(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:

(a) As a debt by installments or otherwise . . . .

However, MCL 449.7(4)(a) does not support defendant's argument. The trial court found that a partnership was formed between plaintiff and defendant based on the February 1, 1998 letter. The letter defines the terms of the partnership, including that plaintiff would receive a share of the monthly net earnings. No mention of repayment of a debt is found in the letter. Nor did any of the usual accompaniments to a debt exist—there was no promissory note, security agreement, amortization schedule, specified interest rate, etc. Defendant's argument that the parties, who are non-lawyers, later also referred to the initial investment as a "loan" does not invalidate the trial court's finding, as the parties clearly referred to the relationship as one of "10% ownership," and the parties' subjective intent to create a "partnership" is not the determining factor. *Byker*, 465 Mich at 653. The parties did later establish an installment schedule for the repayment of plaintiff's initial investment; however, we agree with the trial court that this was properly characterized as an agreement for defendant to buy plaintiff out of the partnership. Even if the parties had intended to somehow convert plaintiff's partnership interest into a debt owed by defendant, the documentation makes clear that plaintiff would retain his interest in the business until the agreement was fully effectuated, which it never was. Defendant himself characterized the business relationship as a partnership that the parties had attempted to convert to a loan when "we [plaintiff and defendant] knew this wasn't gonna work." We therefore affirm the trial court's finding that a partnership existed between plaintiff and defendant that had not been dissolved at the time of the bench trial.

IV. MCR 2.113(F)

Defendant further argues that the trial court erred in failing to grant summary disposition on plaintiff's remaining claims, pursuant to MCR 2.116(C)(8), for the violation of MCR 2.113(F). MCR 2.116(C)(8) states that summary disposition is proper if a plaintiff "has failed to state a claim on which relief can be granted." "A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint." *Maiden*, 461 Mich at 119. MCR 2.113(F) states:

(1) If a claim or defense is based on a written instrument, a copy of the instrument or its pertinent parts must be attached to the pleading as an exhibit unless the instrument is

(a) a matter of public record in the county in which the action is commenced and its location in the record is stated in the pleading;

(b) in the possession of the adverse party and the pleading so states;

(c) inaccessible to the pleader and the pleading so states, giving the reason; or

(d) of a nature that attaching the instrument would be unnecessary or impractical and the pleading so states, giving the reason.

In this case, plaintiff's complaint affirmatively alleges that a partnership exists due to an agreement of the parties, that the agreement was reduced to writing, that a copy of the agreement was attached, and that the violation of the uniform partnership act count is based on defendant allegedly having committed a breach of this partnership agreement. Additionally, plaintiff's claim for an accounting incorporated by reference the common allegations and premised plaintiff's right to an accounting on the fact that plaintiff was a partner in the business. While it became clear at a later hearing that the document the complaint referred to was defendant's February 1, 1998 letter, that document was not attached to the complaint. Furthermore, none of the four enumerated exceptions apply in this case. The clear and unambiguous language of MCR 2.113(F)(1) states that attaching the document to the complaint is mandatory. There is no dispute that plaintiff failed to do so in this case. The trial court thus erred in determining that summary disposition was not appropriate under MCR 2.116(C)(8).

However, "MCR 2.116(I)(5) requires that if summary disposition is appropriate under MCR 2.116(C)(8) . . . plaintiffs shall be given the opportunity to amend their pleadings, unless the amendment would be futile." *Granam v Does*, 303 Mich App 522, 543; 845 NW2d 128 (2014). MCR 2.118(A) states that after 14 days have passed from being served with a responsive pleading a party "may amend a pleading only by leave of the court or by written consent of the adverse party" and that "[l]eave shall be freely given when justice so requires." Therefore, on remand the trial court should grant plaintiff the opportunity to file an amended complaint under MCR 2.116(I)(5) and MCR 2.118(A). We note that under MCR 2.118(D), this amendment would relate back to the date of the original pleading.

## V. DAMAGES

Finally, defendant argues that the trial court's determination of damages was erroneous. We agree that the trial court's damages calculation was not based on evidentiary support and is clearly erroneous. See *Alan Custom Homes*, 256 Mich App at 513. In both its oral and written opinion, the trial court stated in conclusory terms that the business had yearly net profits of at least $80,000 and inventory of a value of at least $600,000. However, there is little to no evidentiary support for these conclusions in the record. The best evidence of the business's yearly net profits would come from the Schedule C's attached to defendant's IRS Form 1040 tax returns. These show net business income for years 2009, 2010, 2011, and 2012 to be $15,342, $15,268, $10,315, and $14,434, respectively. Additionally, the only evidence in the record that makes a statement about the value of the business's current assets is Exhibit D, the business plan admitted by plaintiff. While that document does state that the business's assets were worth $1,000,000, the document is undated and references no figures past year 1998. A purported business plan from 1998 cannot by itself be used to determine the current value of the business assets over 17 years later.

On remand, we direct the trial court to order dissolution of the partnership pursuant to MCL 449.32, and, in the winding up of the partnership, award plaintiff, if applicable, the value of his share of the monthly net earnings owed and the value of his 10% ownership interest, as

requested by plaintiff in Count V of the complaint[3], and to order an accounting, if necessary, as requested by Count VI of plaintiff's complaint, to determine those values.

We affirm the trial court's determination that a partnership existed, vacate the award of damages, and remand for the trial court to allow amendment of the complaint, to enter an order of dissolution, and for a determination of the amounts owed to plaintiff.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Kurtis T. Wilder
/s/ Patrick M. Meter

---

[3] We note that there is no requirement that the business be sold. See MCL 449.40 for the rules governing the settling of accounts between partners.