KAY INVESTMENT COMPANY, LLC v BRODY REALTY NO 1, LLC

Docket No. 263549. Submitted November 14, 2006, at Detroit. Decided December 28, 2006, at 9:15 a.m.

Kay Investment Company, LLC, brought an action in the Oakland Circuit Court against Brody Realty No. 1, LLC; the George Brody Trust; and Robert Brody, seeking a declaratory judgment regarding the nature of a contract to develop and manage a shopping center on land held by the contract's four signatories as tenants in common. The contract, entitled "joint venture agreement," was signed by Robert Brody, George Brody, Joseph Kaufman, and Harold Kaufman. The Kaufmans' half-interest in the project was later transferred to Kay Investment, which, together with the George Brody Trust, wished to sell the property, but Brody Realty, which controlled Robert Brody's one-quarter interest, did not. Venue for the action was changed to the Wayne Circuit Court, where William J. Giovan, J., granted summary disposition to the plaintiff, ruling that the parties had formed a partnership and that the property in question belonged to that partnership. Brody Realty appealed.

The Court of Appeals *held*:

The trial court erred in determining that the parties created a partnership rather than a joint venture. The contract contemplated a single endeavor rather than a general business; specified that the parties would each hold an undivided quarter-interest in the land, reflecting an intent to hold the property as tenants in common; provided for powers of attorney for the parties to sign documents on their wives' behalf, which would be unnecessary in a partnership; and contained no language suggesting the formation of a partnership. Further, the parties did not conduct the business in a manner consistent with the provisions of the Uniform Partnership Act, MCL 449.1 *et seq*. Accordingly, the parties held the land as tenants in common.

Reversed and remanded for further proceedings.

SCHUETTE, J., dissenting, stated that the parties' subjective intent is irrelevant to determining the nature of their agreement, and concluded that the conduct and actions of the parties over the

course of their business relations established a partnership be-
cause they carried on as coowners a business for profit.

JOINT VENTURES — BUSINESS ENTERPRISES FOR PROFIT.

A joint venture is an association to carry out a single business
enterprise for profit.

*Raymond & Prokop, P.C.* (by *Michael M. Jacob* and
*David S. Maquera*), for Kay Investment Company, LLC.

*Kemp, Klein, Umphrey, Endelman & May, PC* (by
*Raymond L. Morrow* and *Richard Bisio*), for Brody
Realty No. 1, LLC.

Before: WHITBECK, C.J., and SAAD and SCHUETTE, JJ.

SAAD, J. Brody Realty No. 1, LLC, appeals the trial
court's grant of summary disposition to Kay Invest-
ment Company, LLC. We reverse and remand for fur-
ther proceedings.

## I. NATURE OF THE CASE

In 1969, Robert Brody, George Brody, Joseph Kauf-
man, and Harold Kaufman entered into an agreement
to develop and manage a shopping center in Southgate.
Some of the successors to the original contracting
parties now want to sell the property. They claim that
the property is owned by a partnership and that, under
Michigan law, unanimous assent by all partners is not
required to sell the property. The successor that opposes
the sale contends that the 1969 agreement created a
joint venture, not a partnership, and that under Michi-
gan law the joint venturers own the property as tenants
in common and, thus, all the tenants in common must
consent to the sale. The trial court held that the 1969
agreement created a partnership. We reverse because
we find that the original contracting parties formed a

joint venture, that the property is held by the partners as tenants in common, and that under Michigan law the property may be partitioned or all the owners must consent to the sale of the property.

## II. FACTS AND PROCEDURAL HISTORY

This case arises from a 1969 contract entitled a "joint venture agreement" that was signed by Robert Brody, George Brody, Joseph Kaufman, and Harold Kaufman. The expressed purpose of the business enterprise, called Southgate Allard Developers, was to build and operate a shopping center on land located in Southgate. The litigants agree that the original parties to the contract owned the property as tenants in common for all but a brief period when they transferred the property to Southgate Allard Developers to obtain financing for the development. Soon thereafter, the property was transferred back to the individuals as tenants in common.

Over the years, the original parties to the 1969 contract assigned their interests in the project to their own trusts or companies. Joseph Kaufman died in the 1980s, and, on January 2, 1987, Harold Kaufman and the estate of Joseph Kaufman executed a quitclaim deed to transfer their total one-half interest in the joint venture to Kay Investment Company, a partnership consisting of Harold Kaufman and Joseph Kaufman's successors. On November 23, 1988, Robert Brody assigned his interest in Southgate Allard Developers to the Robert D. Brody Revocable Trust. In 2000, the trust transferred the one-fourth interest in Southgate Allard Developers to Brody Realty No. 1, LLC (Brody. Realty). George Brody died in 1996, and his one-fourth interest is now held by the George Brody Trust.

The record reflects that disputes about the shopping center arose in 2003 and that Kay Investment and the George Brody Trust expressed an interest in selling the property. In August and October 2004, Harold Kaufman, who managed the property, received two offers to buy the shopping center, for $3 million and $3.05 million. According to the parties, Kay Investment and the George Brody Trust wanted to accept one of the offers, but Brody Realty refused to sell.

On December 3, 2004, Kay Investment filed this declaratory judgment action against Brody Realty and the George Brody Trust.[1] Kay Investment specifically sought a ruling that the 1969 agreement formed a partnership and that the original parties to the contract and their successors conducted their affairs as a partnership. It further sought a ruling that, notwithstanding that the property itself is held by tenants in common, that the Southgate shopping center is partnership property. According to Kay Investment, because the property was owned by the partnership, the unanimous consent of the original joint venturers or their successors or assigns is not required to sell the property and a simple majority of the partners or the managing partner may agree to sell the property. The trial court ultimately granted summary disposition to Kay Invest-

---

[1] The case was originally filed in the Oakland Circuit Court, but venue was changed to the Wayne Circuit Court. Also, before this action, on October 26, 2004, Brody Realty brought an action in the Wayne Circuit Court against Kay Investment and the George Brody Trust, Wayne Circuit Court Case No. 04-433348-CZ. Specifically, Brody Realty asked the trial court to (1) partition the property because the owners disagree about what to do with the development, (2) order Kay Investment to account for the rents collected and profits made on the shopping center, and (3) find that Kay Investment breached its fiduciary duty because Harold Kaufman withheld profits from Brody Realty or used them personally. That case is not currently before us.

ment and ruled that the parties formed a partnership and, therefore, that the property belonged to the partnership itself.[2]

### III. ANALYSIS[3]

The parties dispute whether Robert Brody, George Brody, Joseph Kaufman, and Harold Kaufman intended to create a partnership or a joint venture. We hold that the record evidence compels the conclusion that the original parties to the agreement intended to and did in fact create a joint venture, with the sole purpose of developing and renting out a retail shopping center in Southgate.

As noted, the original parties to the 1969 agreement entered into what they called a "joint venture agreement."[4] In contrast to a partnership, which is an

---

[2] The George Brody Trust concurred in the motion for summary disposition filed by Kay Investment.

[3] The trial court granted summary disposition to Kay Investment and the George Brody Trust under MCR 2.116(C)(10). "This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). As our Supreme Court also explained in *Maiden, supra* at 120:

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10), (G)(4). *Quinto v Cross & Peters Co*, 451 Mich 358; 547 NW2d 314 (1996).

[4] As this Court recently explained in *Davis v LaFontaine Motors, Inc*, 271 Mich App 68, 73; 719 NW2d 890 (2006):

> The main goal in interpreting a contract is to honor the parties' intent. *Mahnick v Bell Co*, 256 Mich App 154, 158-159; 662 NW2d

association of persons to carry on as coowners a business for profit, MCL 449.6, a joint venture or joint "adventure" is defined as "an association to carry out a single business enterprise for a profit." *Berger v Mead*, 127 Mich App 209, 214; 338 NW2d 919 (1983). As the *Berger* Court further explained at 214-215, quoting *Meyers v Robb*, 82 Mich App 549, 557; 267 NW2d 450 (1978):

> A joint venture has six elements:
>
> "(a) an agreement indicating an intention to undertake a joint venture;
>
> "(b) a joint undertaking of
>
> "(c) a single project for profit;
>
> "(d) a sharing of profits as well as losses;
>
> "(e) contribution of skills or property by the parties;
>
> "(f) community interest and control over the subject matter of the enterprise."

Our Supreme Court explained in *Hathaway v Porter Royalty Pool, Inc*, 296 Mich 90, 102; 295 NW 571, amended 296 Mich 733 (1941), that,

> [o]n the whole, . . . it must be said that courts have not laid down any very certain, satisfactory or all-inclusive definition of a joint adventure, nor have they established any fixed or certain boundaries thereof, but, in most cases, they have been content to determine merely whether the given or conceded facts in the particular case constituted the relationship of joint adventures.[5]

---

830 (2003). Courts must discern the parties' intent from the words used in the contract and must enforce an unambiguous contract according to its plain terms. *Id*. at 159. "If the contract language is clear and unambiguous, then its meaning is a question of law for the court to decide." *Conagra, Inc v Farmers State Bank*, 237 Mich App 109, 132; 602 NW2d 390 (1999).

[5] As noted, the Uniform Partnership Act, MCL 449.1 *et seq.*, defines a "partnership" as "an association of 2 or more persons . . . to carry

Despite some common features, our courts have held

on as co-owners a business for profit . . . ." MCL 449.6. Our Supreme
Court clarified in *Byker v Mannes*, 465 Mich 637, 646; 641 NW2d 210
(2002), that "if the parties associate themselves to 'carry on' as co-owners
a business for profit, they will be deemed to have formed a partnership
relationship regardless of their subjective intent to form such a legal
relationship." The *Byker* Court further opined:

> [I]n determining the existence of a partnership, the focus of
> inquiry is on the parties' actual conduct in their business arrange-
> ments, as opposed to whether the parties subjectively intend that
> such arrangements give rise to a partnership. Thus, one analyzes
> whether the parties acted as partners, not whether they subjec-
> tively intended to create, or not to create, a partnership. [*Id.* at
> 649.]

MCL 449.7 also provides that the following rules apply to the determi-
nation of whether a partnership has been created:

> (1) Except as provided by section 16 persons who are not
> partners as to each other are not partners as to third persons;
>
> (2) Joint tenancy, tenancy in common, tenancy by the entire-
> ties, joint property, common property, or part ownership does not
> of itself establish a partnership, whether such co-owners do or do
> not share any profits made by the use of the property;
>
> (3) The sharing of gross returns does not of itself establish a
> partnership, whether or not the persons sharing them have a joint
> or common right or interest in any property from which the
> returns are derived;
>
> (4) The receipt by a person of a share of the profits of a business
> is prima facie evidence that he is a partner in the business, but no
> such inference shall be drawn if such profits were received in
> payment:
>
> (a) As a debt by installments or otherwise,
>
> (b) As wages of an employee or rent to a landlord,
>
> (c) As an annuity to a widow or representative of a deceased
> partner,
>
> (d) As interest on a loan, though the amount of payment vary
> with the profits of the business,

that a joint venture differs from a partnership. *Hathaway, supra* at 101. Our Supreme Court explained in *American Mut Liability Ins Co v Hanna, Zabriskie & Daron*, 297 Mich 599, 606; 298 NW 296 (1941): "In many ways a joint venture is similar to a partnership. However, it must be remembered that *they are separate and distinct legal relationships. The law does not attach the same legal consequences to them.*" (Emphasis added.)

As the *Hathaway* Court also stated:

> "The now widely-recognized legal concept of joint adventure is of modern origin. It has been said to be purely the creature of the American courts. The early common law did not recognize the relationship of coadventurers unless the elements of partnership were disclosed and proved, but it is now generally understood that two or more persons may, by combining their property or labor in a joint venture, create a status which, while having some or many of the characteristics of a partnership, is not identical therewith." [*Hathaway, supra* at 101 (citation omitted).]

And, though our Supreme Court held in *Byker v Mannes*, 465 Mich 637, 649; 641 NW2d 210 (2002), that a partnership may exist notwithstanding the intentions of the parties, with regard to joint ventures, the *Hathaway* Court held:

> Whether the parties to a particular contract have thereby created, as between themselves, the relation of joint adventurers or some other relation depends upon their actual intention . . . and such relationship arises only when they intend to associate themselves as such. This intention is to be determined in accordance with the ordinary rules governing the interpretation and construction of contracts. [*Hathaway, supra* at 103 (citations omitted).]

(e) As the consideration for the sale of the good-will of a business or other property by installments or otherwise.

Though recent caselaw does not discuss the distinctions drawn by our Supreme Court between partnerships and joint ventures, because published opinions from our Supreme Court hold that the two business relationships are different and carry distinct legal consequences, we are not at liberty to treat the two business relationships as identical.

The significance of whether the parties here created a partnership or a joint venture is that a partnership may own real property, or the partners may own as tenants in partnership, see *Wengel v Wengel*, 270 Mich App 86, 93; 714 NW2d 371 (2006), MCL 449.9, 449.10, and 449.25(1).[6] Importantly, joint venturers hold real

---

[6] In a partnership, "[e]very partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership . . . ." MCL 449.9(1). Thus, "[w]here title to real property is in the partnership name, any partner may convey a title to such property by a conveyance executed in the partnership name . . . ." MCL 449.10(1). Further, "[w]here the title to real property is in the name of 1 or more or all the partners, or in a third person in trust for the partnership, a conveyance executed by a partner in the partnership name, or in his own name, passes the equitable interest of the partnership . . . ." MCL 449.10(4). Moreover, pursuant to MCL 449.25:

(1) A partner is a co-owner with his partners of specific partnership property holding as a tenant in partnership;

(2) The incidents of this tenancy are such that:

(a) A partner, subject to the provisions of this act and to any agreement between the partners, has an equal right with his partners to possess specific partnership property for partnership purposes; but he has no right to possess such property for any other purpose without the consent of his partners,

(b) A partner's right in specific partnership property is not assignable except in connection with the assignment of the rights of all the partners in the same property,

property as *tenants in common. Swan v Ispas*, 325 Mich 39, 44; 37 NW2d 704 (1949). As this Court explained in *Quinlan Investment Co v Meehan Cos, Inc*, 171 Mich App 635, 639; 430 NW2d 805 (1988): "A tenancy in common is a legal estate, MCL 554.43; MSA 26.43, with each tenant having a separate and distinct title to an undivided share of the whole. Each is entitled to possession of the whole and every part thereof, subject to the same right in the other cotenants." Accordingly, because there is unity of possession, "one cotenant cannot ordinarily bind cotenants by contracts with third persons or transfer or dispose of the interest of another cotenant in such a manner as to be binding, unless duly authorized to do so, or unless his or her act is thereafter ratified by the other cotenants." 20 Am Jur 2d, Cotenancy and Joint Ownership, § 94, p 225; see also *Wengel, supra* at 94 n 4. Therefore, here, no party holding title to the property as a tenant in common may sell the entire property to a third party *without the consent of all other cotenants*. Brody Realty has with-

---

(c) A partner's right in specific partnership property is not subject to attachment or execution, except on a claim against the partnership. When partnership property is attached for a partnership debt, the partners, or any of them, or the representatives of a deceased partner, cannot claim any right under the homestead or exemption laws,

(d) On the death of a partner his right in specific partnership property vests in the surviving partner or partners, except where the deceased was the last surviving partner, when his right in such property vests in his legal representative. Such surviving partner or partners, or the legal representative of the last surviving partner, has no right to possess the partnership property for any but a partnership purpose,

(e) A partner's right in specific partnership property is not subject to dower, curtesy, or allowances to widows, heirs, or next of kin.

held its consent to sell the property to the third party offerors, notwithstanding that Kay Investment and the George Brody Trust wish to sell. Instead, Brody Realty would prefer to buy the property or have it partitioned, as authorized for tenancies in common by MCL 600.3304. See *Albro v Allen*, 434 Mich 271, 284; 454 NW2d 85 (1990).

As we noted at the outset, we hold that the original parties to the agreement formed a joint venture. Robert Brody, George Brody, Joseph Kaufman, and Harold Kaufman titled their contract a "joint venture agreement." The purpose of the 1969 agreement is clear: the founders agreed to carry on a joint venture rather than a general partnership because the agreement contemplates a single endeavor—to own, build, and rent out a retail shopping center in Southgate. In other words, the agreement was not to form a general business, but was limited in scope to the undertaking of a specific project. *Berger, supra* at 214.

It is undisputed that the parties explicitly titled the property as a tenancy in common, which, as noted, is typical of a joint venture.[7] On June 2, 1969, before Southgate Allard Developers was formed, the Brodys and their wives executed a quitclaim deed to the assumed name Southgate Allard Developers.[8] The property was held in the name of the venture for a very short time before Southgate Allard Developers executed a

---

[7] Kay Investment and the George Brody Trust argue, and the trial court agreed, that the decision in *McCormick, supra*, stands for the proposition that, regardless of how the land is titled, it may be considered partnership property if the partners treated it as such. However, unlike in *McCormick*, the parties here did not create a partnership in the first place.

[8] Kay Investment and the George Brody Trust assert that the use of the assumed name Southgate Allard Developers indicates that the parties intended to form a partnership. However, we agree with Brody Realty

quitclaim deed to Robert Brody and wife, George Brody and wife, Joseph Kaufman and wife, and Harold Kaufman and wife, for their undivided one-fourth interests.[9] Also, though the agreement states that the original parties to the contract intended that the company would acquire ownership of the property, it further states that each party would hold an undivided one-fourth interest in the land, which clearly reflects an intent to hold the property as tenants in common.

In the original contract, the parties agreed to share the profits of the business in amounts equal to their ownership interests, which could indicate either a partnership or a joint venture. See MCL 449.7; *Berger, supra* at 214-215. However, the parties specifically joined their wives in the agreement to bind their dower rights, which, pursuant to MCL 449.25(2)(e), does not apply to partnership property. Similarly, as Brody Realty points out, the agreement provides for powers of attorney so that Robert Brody, George Brody, Joseph Kaufman, and Harold Kaufman could sign documents on behalf of their wives, which would be unnecessary if a partnership was created and if the partnership owned the property.

The agreement also does not contain language that suggests the formation of a partnership. It does not contain the word "partnership" and it does not discuss majority/minority rules regarding decisions about the property or the authority to convey it. Thus, a tenancy in partnership is not indicated by the contract. We also

---

that an assumed name may be used for entities other than a partnership and that the use of an assumed name does not necessarily establish that a partnership was formed.

[9] Indeed, arguably, if a partnership existed and the one partnership asset was transferred out of the partnership name, the partnership would have been dissolved at that time. *Schwier v Hurlburt,* 184 Mich 698, 702; 151 NW 603 (1915).

agree with Brody Realty that the parties did not conduct the business in a manner consistent with the provisions of the Uniform Partnership Act (UPA), MCL 449.1 *et seq.* See *Byker, supra* at 638-639 (whether a partnership exists depends on whether the members "jointly carry on a business for profit within the meaning of the Michigan Uniform Partnership Act"). For example, the UPA states that, if a partner dies, his or her rights in the property pass to the surviving partners, not to his or her heirs or successors. MCL 449.25(2)(d). Here, as noted, the record reflects that Joseph Kaufman died in the 1980s, and, on January 2, 1987, Harold Kaufman and the estate of Joseph Kaufman executed a quitclaim deed to transfer their total one-half interest in the property to Kay Investment Company, a partnership consisting of Harold Kaufman and Joseph Kaufman's successors. This transaction indicates that Joseph Kaufman's share of the property passed to his estate rather than to the other "partners," which is contrary to the UPA's partnership rules. Further, it appears that the individual parties assigned not only their interests in the profits of the business venture to their own trusts or companies, but also their interests in the property itself, which is contrary to the UPA and strongly suggests an understanding that the property was not owned by a partnership, but by the individuals themselves. MCL 449.25(2)(b). Moreover, under the UPA, the death of a partner dissolves the partnership, MCL 449.31(4), and it is clear that no dissolution or windup occurred.[10]

---

[10] Kay Investment and the George Brody Trust emphasize that the parties filed K-1 tax returns, which are generally used to declare partnership income. However, the Internal Revenue Code does not distinguish between a partnership and a joint venture for federal tax purposes. Indeed, 26 USC 7701(a)(2) (2005) provides that "[t]he term 'partnership' includes a syndicate, group, pool, *joint venture,* or other

For the reasons stated, under Michigan law, the original parties formed a joint venture, conducted the project as joint venturers, and thus held the property as tenants in common. Accordingly, the trial court erred when it ruled that the original parties to the agreement formed a partnership that continued with their successors, and it erred by granting summary disposition to Kay Investment and the George Brody Trust.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

WHITBECK, C.J., concurred.

SCHUETTE, J. (*dissenting*). This case involves the disputed ownership of real property and the question whether a "joint venture" initially created among four individuals from two families—the two Brody brothers and the two Kaufman brothers—evolved over time into a relationship as coowners of a business for profit, evidencing a partnership under MCL 449.6.

A review of pertinent Michigan caselaw reveals a fine line and a thin distinction between what constitutes a partnership or a joint venture. My distinguished and thoughtful colleagues in the majority have determined that the business relationship of the parties and the ownership of the real estate, a shopping center, indicate a joint venture. I disagree.

I respectfully conclude that the conduct and actions of the parties over the course of their business relations established a partnership because they "carr[ied] on as

unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term 'partner' includes a member in such a syndicate, group, pool, *joint venture*, or organization." (Emphasis added.)

co-owners a business for profit." MCL 449.6(1); see also *Byker v Mannes*, 465 Mich 637, 645-646; 641 NW2d 210 (2002).

Our Supreme Court in *Byker* held that the subjective intent among individuals to create a partnership is not required if their actions and conduct demonstrate the intent or desire to carry on a business for profit. *Id.* at 653. Keeping a statutory focus firmly in mind, Justice MARKMAN stated: "Pursuant to MCL 449.6(1), in ascertaining the existence of a partnership, the proper focus is on whether the parties intended to, and in fact did, 'carry on as co-owners a business for profit' and not on whether the parties subjectively intended to form a partnership." *Id.*

The *Byker* decision provides instruction and guidance to this case. As Justice MARKMAN expressed, past decisions of our Supreme Court have used "imprecise language" and caused some "confusion" regarding what constitutes a partnership. *Id.* at 650-651. The starting point in any analysis must commence with a review of the pertinent statutory provisions, MCL 449.6 and 449.7. The subjective intent of the parties is conspicuously absent in the enumerated items to be considered when determining whether a partnership exists. See MCL 449.7.

> That is, if the parties associate themselves to "carry on" as co-owners a business for profit, they will be deemed to have formed a partnership relationship regardless of their subjective intent to form such a legal relationship. The statutory language is devoid of any requirement that the individuals have the subjective intent to create a partnership. Stated more plainly, the statute does not require partners to be aware of their status as "partners" in order to have a legal partnership. [*Byker, supra* at 646.]

Justice COOLEY, quoted extensively in *Byker*, clearly outlined the differences between individuals' subjective intent and their conduct in a business relationship:

"If parties intend no partnership the courts should give effect to their intent, unless somebody has been deceived by their acting or assuming to act as partners; and any such case must stand upon its peculiar facts, and upon special equities.

"It is nevertheless possible for parties to intend no partnership and yet to form one. If they agree upon an arrangement which is a partnership in fact, it is of no importance that they call it something else, or that they even expressly declare that they are not to be partners. The law must declare what is the legal import of their agreements, and names go for nothing when the substance of the arrangement shows them to be inapplicable." [*Byker, supra* at 648-649, quoting *Beecher v Bush*, 45 Mich 188, 193-194; 7 NW 785 (1881).]

Likewise, in *McCormick v McCormick*, 342 Mich 525, 530; 70 NW2d 706 (1955), our Supreme Court held that disputed property was owned by a partnership, explaining that it was the parties' behavior that led to that conclusion, and "[i]t was not essential that [the parties] should call themselves partners . . . [or] that the record title should stand in the names of all partners."

In this case, in 1969, the parties commenced their business relations in the form of a joint venture, for a specific term of ten years, with the stated plan to construct a shopping center. The shopping center was completed by the late 1970s, and the mortgage was paid off in 1985. Interests of the original joint venturers were transferred to trusts or other companies, as one of the Kaufman brothers died and successors to the original contracting parties assumed ownership roles in the business. The record reflects that the parties filed Schedule K-1 forms each year on their federal income tax returns, declaring each partner's share of income, credits, deductions, etc. The record also reflects that each founder declared his profits or losses in an amount equal to his share of the business.

The parties' conduct over time, Justice COOLEY's admonition, and the *Byker* holding cause me to conclude that the parties carried on a business for profit, giving rise to a partnership specific to the ownership of the property in dispute. The parties' conduct and actions, not their subjective intent or whether they considered themselves partners, is the core determination to be made in this case. See *Byker, supra* at 649.

I would affirm the trial court's decision.