# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT H. TORRES,

        Plaintiff-Appellant,

v

ESTATE OF ROBERTO TORRES, DIANA
CASTILLO TORRES, and NICHOLAS C.
TORRES,

        Defendants-Appellees.

UNPUBLISHED
June 14, 2016

No. 326431
Oakland Circuit Court
LC No. 2014-142936-CZ

Before: JANSEN, P.J., and SERVITTO and M. J. KELLY, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court order dismissing his complaint to quiet title in a parcel of real property pursuant to MCR 2.116(C)(4) and (10). We affirm the trial court's decision dismissing plaintiff's claim of title pursuant to MCR 2.116(C)(10), but reverse and remand for further proceedings on the issue of plaintiff's MCR 3.411(F) claim.

In 2000, plaintiff's father, Roberto Torres, and his stepmother, Diana Torres, purchased a home in Waterford, Michigan, securing a mortgage for the purchase of the home. Plaintiff, however, was the only person who resided in the home and, according to him, was repeatedly told by Roberto that the home was purchased for plaintiff. Plaintiff asserts that he paid the majority of the amount of the monthly mortgage, taxes, and insurance for the home to his father, and that he and his father made improvements to the home using monies primarily supplied by plaintiff.

In 2006, Roberto and Diana quitclaimed the property at issue to themselves and defendant Nicholas C. Torres, Diana's biological son and Roberto's adoptive son. In that same year, all three defendants moved to Texas and purchased a home. Plaintiff asserts that he continued to pay Roberto for the mortgage on the property and that Roberto reassured and told plaintiff that the property was his and that he would title the property to plaintiff at some point.

Roberto passed away in February 2014, after which Diana and Nicholas quit claimed the property at issue to themselves as survivors of the decedent. In May 2014, Diana filed a petition in a Texas Probate Court to probate the estate of Roberto. She was appointed executrix of the estate and a will of Roberto was admitted into probate.

-1-

Plaintiff filed this action in September 2014 asserting that the property at issue was fraudulently conveyed in 2006 and in 2014, in an attempt to deny plaintiff equitable title to the property. Plaintiff further asserted that Roberto intended that the property at issue be held in trust for plaintiff and that defendants would be unjustly enriched if the trial court failed to find in his favor. Plaintiff sought a declaratory judgment and for title to the property to be quieted in his favor.

Defendants moved for summary disposition contending that the trial court lacked personal and subject matter jurisdiction, that plaintiff failed to state a claim for which relief could be granted, and that there were no genuine issues of material fact existing that warranted a trial. The trial court granted defendants' motion under MCR 2.116(C)(4), opining that to the extent plaintiff's arguments presented a challenge to Roberto Torres' will, the trial court had no subject matter jurisdiction given that the probate court had exclusive jurisdiction over matters relating to the settlement of a deceased individual's estate. The trial court further opined that there was no genuine issue of material fact that a constructive trust should not be established or concerning plaintiff's remaining claims, thereby warranting summary disposition under MCR 2.116(C)(10) in defendants' favor. This appeal followed.

On appeal, plaintiff first contends that the trial court erred in dismissing his complaint pursuant to MCR 2.116(C)(10) because several issues of material fact remained and because the trial court erroneously made findings of fact regarding the credibility of the proffered evidence. "This Court reviews de novo a trial court's grant or denial of a motion for summary disposition." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). A motion for summary disposition pursuant to MCR 2.116(C)(10) "tests the factual sufficiency of the complaint." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Summary disposition is proper where there is no "genuine issue regarding any material fact." *Id*. "A reviewing court may not employ a standard citing the mere possibility that the claim might be supported by evidence produced at trial. A mere promise is insufficient under our court rules." *Bennett v Detroit Police Chief*, 274 Mich App 307, 317; 732 NW2d 164 (2006). "While it is true that the trial court must consider affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, the nonmoving party may not rely on mere allegations or denials, but must set forth specific facts that show that a genuine issue of material fact exists." *Id*. at 318.

Plaintiff contends that there is a question of fact as to whether a constructive trust can be established because he provided evidence of superior equitable title in the subject property. "A constructive trust is an equitable remedy created not by intent or by agreement, but by the operation of law." *In re Filibeck Estate*, 305 Mich App 550, 552; 853 NW2d 448 (2014). "A constructive trust may be imposed 'where such trust is necessary to do equity or to prevent unjust enrichment . . . .' " *Kammer Asphalt Paving Co, Inc v East China Twp Schools*, 443 Mich 176, 188; 504 NW2d 635 (1993), quoting *Ooley v Collins*, 344 Mich 148, 158; 73 NW2d 464 (1955). "The imposition of a constructive trust makes the holder of legal title the trustee for the benefit of another who in good conscience is entitled to the beneficial interest." *Filibeck Estate*, 305 Mich App at 552 (internal citations and quotations omitted). "When property has been acquired

in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Kent v Klein*, 352 Mich 652, 656; 91 NW2d 11 (1958) (quotations and citations omitted). "Fraud in the inception we do not require, nor deceit, nor chicanery in any of its varied guises, for it is not necessary that property be wrongfully acquired. It is enough that it be unconscionably withheld." *Id*. at 657. In other words, "[a] constructive trust may thus be imposed under any circumstance that renders it unconscionable for the holder of legal title to retain and enjoy the property." *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 202; 729 NW2d 898 (2006).

The question, therefore, is whether it would be "unconscionable" for Diana and Nicholas "to retain and enjoy the property." See *id*. Plaintiff asserts that it was unconscionable for them to hold title to the property because decedent purchased the property for plaintiff and had made oral promises to plaintiff expressing such intent. However, this argument ignores the type of ownership originally granted to Diana in the premises.

It is undisputed that the decedent and Diana obtained the disputed premises under a warranty deed as husband and wife. "Our longstanding common law provides that, when a deed is conveyed to a husband and wife, the property is held as a tenancy by the entirety." *Walters v Leech*, 279 Mich App 707, 711; 761 NW2d 143 (2008). Only where the deed expressly provides otherwise is an estate other than a tenancy by the entirety created. *Tamplin v Tamplin*, 163 Mich App 1, 5; 413 NW2d 713 (1987). Where a deed does "not specify the nature of the tenancy[,]" but the deed is conveyed to a husband and wife, the two hold "the subject property as tenants by the entirety." *Id*.

"In a tenancy by the entirety, the husband and wife are considered one person in the law." *Walters*, 279 Mich App at 711. "When real property is so held as tenants by the entireties, neither spouse acting alone can alienate or encumber to a third person an interest in the fee of lands so held." *Rogers v Rogers*, 136 Mich App 125, 134; 356 NW2d 288 (1984). "The consequence is that neither the husband nor the wife can dispose of the property without the assent of the other and the whole property must remain to the survivor." *Walters*, 279 Mich App at 711. In other words, "both spouses have a right of survivorship, meaning that, in the event that one spouse dies, the remaining spouse automatically owns the entire property." *Tkachik v Mandeville*, 487 Mich 38, 46-47; 790 NW2d 260 (2010). "Thus, entireties properties are not part of a decedent spouse's estate, and the law of descent and distribution does not apply to property passing to the survivor." *Id*. at 47.

Here, because the warranty deed was silent on the type of tenancy to be created, a tenancy by the entirety was created between decedent and Diana, as husband and wife, when they purchased the property in 2000. *Tamplin*, 163 Mich App at 5; *Walters*, 279 Mich App at 711. Plaintiff does not challenge that deed or allege any fraudulent activity on behalf of Diana in 2000. Therefore, from 2000 until at least 2006, decedent and Diana owned the subject property as tenants by the entirety. Pursuant to *Walters*, 279 Mich App at 711, decedent could not possibly have disposed of the property without Diana's consent. In other words, Diana's title in the property could not be affected by decedent's alleged oral promises to plaintiff, unless she agreed to those same promises. See *Tkachik*, 487 Mich at 46. Plaintiff never contends that Diana was a party to the agreement between himself and decedent regarding the alleged purchase of the property for plaintiff. Indeed, even in plaintiff's complaint, he notes the decedent's

attempts to keep Diana in the dark about the alleged oral promise. Specifically, plaintiff alleged that decedent told him that the mortgage had been discharged to clear all liens on the subject property so that plaintiff could take title without issue, but that decedent asked plaintiff to keep that from Diana. Assuming that the oral promise did actually take place, as alleged by plaintiff and his two supporting affidavits, because that promise was not accompanied by assent from Diana, Diana's interest in the subject property could not be, as a matter of law, affected. *Id*.

The subject property, however, did not remain titled solely to decedent and Diana until decedent's death. Rather, as established by the record, the subject property was quit claimed by Diana and decedent to Diana, decedent, and Nicholas in 2006. "Where a conveyance of real property was made to a husband and wife and a third person, the husband and wife were regarded as one person and they therefore took but one moiety as tenants by the entirety while the third person took his share as a tenant in common." *Butler v Butler*, 122 Mich App 361, 365; 332 NW2d 488 (1983). Therefore, the 2006 quit claim deed created a situation where decedent and Diana held title to half of the subject property as tenants by the entirety, and Nicholas held title to half of the property as a tenant in common with Diana and decedent. We have already established that decedent was not permitted to encumber the rights of the property to the extent that it was held as a tenant by the entirety with Diana. See *Tkachik*, 487 Mich at 46. That effect of law remained after the 2006 quit claim deed; so to the extent there were any promises by decedent to plaintiff after 2006, those promises still did not affect Diana's title in the property unless she consented.

Decedent could also not, as a matter of law, encumber Nicholas's interest in the property after 2006, without Nicholas's assent. " 'A tenancy in common is a legal estate . . . with each tenant having a separate and distinct title to an undivided share of the whole.' " *Kay Investment Co, LLC v Brody Realty No 1, LLC*, 273 Mich App 432, 441; 731 NW2d 777 (2006), quoting *Quinlan Investment Co v Meehan Cos*, 171 Mich App 635, 639; 430 NW2d 805 (1988). "Accordingly, because there is unity of possession, one cotenant cannot ordinarily bind cotenants by contracts with third persons or transfer or dispose of the interest of another cotenant in such a manner as to be binding, unless duly authorized to do so, or unless his or her act is thereafter ratified by the other cotenants." *Kay Investment*, 273 Mich App at 441 (citations and quotations omitted). Like Diana, the record is absent of any contention that Nicholas consented to decedent's oral promises. Indeed, plaintiff makes no claim that Nicholas even knew of such promises by decedent. Therefore, due to Nicholas's lack of consent, decedent's oral promises could not encumber Nicholas's interest in the property. *Id*.

On appeal, plaintiff also asserts that the 2006 quit claim deed was invalid because of undue influence on the decedent by Diana. Plaintiff is correct that a deed that is the product of undue influence may be found to be invalid. *Kar v Hogan*, 399 Mich 529, 537; 251 NW2d 77 (1976).

> To establish undue influence it must be shown that the grantor was subjected to threats, misrepresentation, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency and impel the grantor to act against his inclination and free will. Motive, opportunity, or even ability to control, in the absence of affirmative evidence that it was exercised, are not

sufficient. [*In re Estate of Karmey*, 468 Mich 68, 75; 658 NW2d 796 (2003) (citations and quotations omitted).]

While there are situations where undue influence is presumed, that "presumption is not applicable to marriage." *Id*.

Plaintiff has provided no evidence of undue influence by Diana, but only directs this Court to a statement by decedent's brother that decedent was suffering memory loss and symptoms of Alzheimer's or dementia as early as 2006. Plaintiff alleges no theory of how Diana actually applied some undue influence, only blatant accusation that she did. Plaintiff's argument is without merit, because he has provided no "affirmative evidence" that her opportunity to use undue influence was actually used. *Id*.

Plaintiff's assertion that the 2006 deed was invalidated is also irrelevant, because even if the deed was invalidated due to undue influence, it would not permit plaintiff any relief. If indeed this Court or the trial court were to determine that the 2006 quit claim deed were in some manner fraudulent and needed to be set aside, the remedy would be to simply restore the 2000 warranty deed. *Turok v Dombrowski*, 341 Mich 562, 569; 67 NW2d 798 (1954) ("We do not aid one of two parties guilty of complicity in fraud, but leave them where their own actions left them."). As we have already discussed herein, decedent and Diana's legal status under the 2000 deed was as tenants by the entirety, under which Diana's interest could not be encumbered by unilateral promises by decedent. Therefore, plaintiff's argument that the 2006 quit claim deed be found invalidated is irrelevant to the issue of constructive trust presented on appeal. See *id*.

In plaintiff's last attempt to prove that a constructive trust should be imposed, plaintiff argues that decedent's will was the product of undue influence by Diana. Decedent's will is not relevant to the subject property. Again, decedent's interest in the subject property from the time of purchase to the time of decedent's death, was as a tenant by the entirety with Diana. With tenants by the entirety, "in the event that one spouse dies, the remaining spouse automatically owns the entire property." *Tkachik*, 487 Mich at 46-47. "[W]hen a husband and wife choose to hold property by the entirety, neither spouse may individually . . . devise . . . that property without the consent of the other spouse." *Canjar v Cole*, 283 Mich App 723, 730; 770 NW2d 449 (2009). In other words, when decedent died, all of decedent's interest in the property transferred to Diana as an operation of law, regardless of any provision in decedent's will, or subject to the effectiveness thereof. See *id*. Therefore, any challenge made by plaintiff to the validity of decedent's will is entirely irrelevant to the issues presented before this Court, because the subject property was "not part of [] decedent['s] estate." *Id*.

Finally, plaintiff asserts that the trial court made impermissible findings of fact in favor of defendants when considering whether a constructive trust should be imposed. Specifically, plaintiff alleged that the trial court found that Enrique Torres' allegation of decedent's mental incapacity in 2006 was not sufficient to question the competency of decedent and that the trial court believed Diana's averment that the payments made by plaintiff were rent payments, rather than payments to purchase the home. Assuming that the trial court did improperly make such findings, those findings would have been irrelevant. As is evident from the preceding analysis, both the alleged incapacity of decedent to make the 2006 quit claim deed and the payments made by plaintiff for the property, were irrelevant to the question of a constructive trust. In other

words, those facts were irrelevant to the determination that Diana and Nicholas held conscionable legal title to the subject property.

In sum, Diana obtained legal title to the property in 2000, as a tenant by the entirety with decedent, and remained in such legal title throughout decedent's life, and during any promise decedent made to plaintiff. That legal title could not be disturbed by decedent or plaintiff, and title vested with her entirely by operation of law upon decedent's death. A constructive trust will be found only when "it [is] unconscionable for the holder of legal title to retain and enjoy the property." *Morris Pumps*, 273 Mich App at 202. Diana engaged in no activity that would indicate that her holding title would be "unconscionable." Even if we assume everything that plaintiff alleges Diana did as true, including using undue influence on the allegedly mentally incapacitated decedent to make the 2006 quit claim deed, make plaintiff sign a rental agreement, write and sign decedent's 2012 will, and write the letter to evict plaintiff in 2013, we are still left with Diana's unaltered and inalienable title to the subject property as a tenant by the entirety. *Tkachik*, 487 Mich at 46-47. Therefore, upon decedent's death, Diana obtained title as required by the law and in an ethical manner.

Due to the 2006 quit claim deed, Nicholas also held legal title to the subject property. To the extent that plaintiff asserts superior legal title to the subject property, he is also alleging superior title to Nicholas. Like Diana, Nicholas obtained title through legal means of conveyance, as discussed *supra*. Unlike Diana, however, plaintiff makes no claim that Nicholas engaged in any wrongdoing or fraudulent activity that caused the constructive trust to arise. Rather, according to plaintiff, Nicholas was just the beneficiary of Diana's undue influence, in that he ended up with a one-half interest in the subject property pursuant to the 2006 quit claim deed. However, "a constructive trust may not be imposed upon parties who have in no way contributed to the reasons for imposing a constructive trust." *Morris Pumps*, 273 Mich App at 202-203 (citations and quotations omitted). There is no evidence that Nicholas engaged in any activity that amounted to the reasons plaintiff sought the constructive trust; therefore, it would not have been proper to impose the constructive trust against him. *Id*. Nicholas holding legal title to the property was not "unconscionable" because he held valid legal title, and there was no allegation that Nicholas engaged in any wrongdoing. *Id*.

The trial court properly determined that there was no genuine issue of fact regarding implementation of a constructive trust in favor of plaintiff for the subject property. Without a constructive trust, plaintiff was left without any allegation that he held superior equitable title in the subject property. Therefore, there was no question of fact that plaintiff had failed to make a prima facie case of superior title required in an action to quiet title. *Beulah Hoagland Appleton Qualified Personal Residence Trust v Emmet County Road Com'n*, 236 Mich App 546, 550; 600 NW2d 698 (1999). Because plaintiff failed in that regard, summary disposition by the trial court of plaintiff's claims to title in the property was properly granted in favor of defendants. *Special Property VI v Woodruff*, 273 Mich App 586, 590; 273 NW2d 753 (2007).

Plaintiff also contends that the trial court erred in dismissing his complaint for lack of subject matter jurisdiction under MCR 2.116(C)(4). However, the trial court actually only disposed of plaintiff's claims challenging the validity of decedent's will under this court rule. In any event, we need not consider this argument, given our above conclusion that the issue of

decedent's will is entirely irrelevant to the outcome of this case because the property in question was never an asset that could be devised.

Lastly, plaintiff contends that the trial court erred in refusing to consider whether plaintiff set forth a colorable claim for unjust enrichment under MCR 3.411(F) in his complaint and that the trial court, having determined title to the property, should have retained jurisdiction over plaintiff's claim for unjust enrichment. "[C]onstruing and applying a court rule presents a legal issue subject to review de novo." *Wickings v Arctic Enterprises, Inc*, 244 Mich App 125, 133; 624 NW2d 197 (2000).

In his complaint, plaintiff set forth a claim entitled "unjust enrichment" but admittedly did not specifically mention MCR 3.411(F) in that section of the complaint. Plaintiff did, however, reference MCR 3.411 in the "Jurisdiction" section of complaint. The trial court found that because plaintiff's unjust enrichment claim did not identify MCR 3.411(F), because a claim under that court rule is not ripe until after a finding of title has been made, and because the relief sought by plaintiff went beyond that provided for in MCR 3.411(F), defendants were entitled to summary disposition with respect to plaintiff's unjust enrichment claim pursuant to MCR 2.116(C)(10).

MCR 3.411(B) provides that a complaint to determine interests in land must describe the subject property "with reasonable certainty" and describe the parties' interest in the property along with "the facts establishing the superiority of the plaintiff's claim." MCR 3.411(B). A claim to recoup the value of improvements and buildings added to the subject property if title is quieted in favor of another is governed by MCR 3.411(F). That subrule states:

> (1) Within 28 days after the finding of title, a party may file a claim against the party found to have title to the premises for the amount that the present value of the premises has been increased by the erection of buildings or the making of improvements by the party making the claim or those through whom he or she claims.

> (2) The court shall hear evidence as to the value of the buildings erected and the improvements made on the premises, and the value the premises would have if they had not been improved or built upon. The court shall determine the amount the premises would be worth at the time of the claim had the premises not been improved, and the amount the value of the premises was increased at the time of the claim by the buildings erected and improvements made.

> (3) The party claiming the value of the improvements may not recover their value if they were made in bad faith. [MCR 3.411(F).]

The above rule does not require that a separate *complaint* be filed against the party found to have title to initiate a new civil action. It simply allows for one party to file a claim against the titled party. Moreover, "Michigan is a notice-pleading state." *Johnson v QFD, Inc*, 292 Mich App 359, 368; 807 NW2d 719 (2011). "[T]he primary function of a pleading in Michigan is to give notice of the nature of the claim or defense sufficient to permit the opposite party to take a responsive position." *Stanke v State Farm Mut Auto Ins Co*, 200 Mich App 307, 317; 503 NW2d

758 (1993). As previously indicated, plaintiff did mention MCR 3.411 in his complaint. The complaint also references the alleged repairs and improvements to the property made by plaintiff. Plaintiff also provided evidence in the form of invoices for the tree removal and drywall. Additionally, plaintiff provided a list of improvements made to the property as an exhibit and identified how much he paid for all of that work, alleging more than $32,000 in improvements to the property. Defendants thus had adequate notice that plaintiff intended to make a claim for restitution pursuant to MCR 3.411(F). See *Id*. at 317.

In its opinion and order, the trial court determined that defendants had title to the disputed property. Plaintiff should thereafter have been provided 28 days to make a colorable claim for restitution of the value of the improvements. Instead, the trial court found that MCR 3.411(F) did not "salvage" plaintiff's unjust enrichment claim and closed the case. This was in error. The trial court could properly dismiss the unjust enrichment claim but, because plaintiff had put defendants on notice of his intent to seek damages for improvements made to the home, the trial court should nevertheless have left the case open to allow plaintiff 28 days to pursue his claim for the value of improvements.

We affirm the trial court's decision dismissing plaintiff's claim of title pursuant to MCR 2.116(C)(10), but reverse and remand for further proceedings on the issue of plaintiff's MCR 3.411(F) claim. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Deborah A. Servitto
/s/ Michael J. Kelly