# STATE OF MICHIGAN

# COURT OF APPEALS

DEBRA MAJOR,

        Plaintiff-Appellant,

v

VILLAGE OF NEWBERRY,

        Defendant-Appellee.

FOR PUBLICATION
August 2, 2016
9:00 a.m.

No. 322368
Luce Circuit Court
LC No. 2013-005668-CD

Before: MARKEY, P.J., and STEPHENS and RIORDAN, JJ.

STEPHENS, J.

Plaintiff appeals as of right the circuit court order granting summary disposition to defendant under MCR 2.116(C)(7), (8), and (10). We affirm in part and reverse in part.

## I. BACKGROUND

Plaintiff Debra Major was an employee of defendant Village of Newberry. Relevant to this case, defendant operated two departments—the department of public works and the department of water and light. Plaintiff began working for defendant on May 15, 2002. Plaintiff held the position of meter reader with defendant from 2002 to 2008, which is a position in the department of public works, and held the position of apprentice lineman in 2010 and 2011, which is in the department of water and light. Plaintiff applied for the position of apprentice lineman[1] in 2008, but defendant's village council voted not to offer plaintiff the position. Plaintiff filed a union grievance on July 3, 2008. Later in December 2008, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) that alleged plaintiff was denied the apprentice lineman position for no other reason than being female. The EEOC charge was resolved with an October 2010 conciliation agreement where plaintiff agreed not to sue defendant with respect to the allegations in the charge, and plaintiff received the position of apprentice lineman.

---

[1] The position of lineman involves the installation and maintenance of overhead electrical lines, the construction and repair of overhead wires, the repair of street lights, the setting and removal of telephone poles, and the trimming of trees with chainsaws.

In accordance with the conciliation agreement, plaintiff was awarded the position of apprentice lineman on December 21, 2010. Two months later, on February 22, 2011, plaintiff wrote Beverly Holmes, defendant's village manager, and requested to return to her prior position of meter reader in accordance with her rights under the union contract. Plaintiff cited two reasons for her decision. Plaintiff claimed that Matthew Perry (the lineman supervisor) had "done everything in his power to make" her 60-day period on the job "miserable" and that she did not see how she could attain the required 7,000 hours of work requirement to become a journeyman lineman.

Dissatisfied with her tenure as a lineman, plaintiff filed a second charge against defendant with the EEOC in July 2011, alleging sex discrimination and that she was subjected to retaliation after filing her 2008 charge. On August 3, 2012, plaintiff was notified by the EEOC that "[t]he facts, evidence, and information obtained throughout the course of the investigation fails to establish that you were discriminated against on the basis which you alleged in the charge." The EEOC letter informed plaintiff that "UPON RECEIPT OF THE DISMISSAL AND NOTICE OF RIGHTS, IT IS IMPERATIVE THAT YOU FILE SUIT IN THE UNITED STATES DISTRICT COURT WITHIN NINETY (90) DAYS OF RECEIPT. FAILURE TO DO SO WILL RESULT IN YOUR LOSS OF RIGHT TO PROCEED IN COURT."

Plaintiff filed a charge with Michigan's Department of Civil Rights (MDCR) that was dismissed on September 19, 2012. The MDCR Notice of Disposition and Order of Dismissal provided that plaintiff could either request reconsideration of the refusal to issue a charge within 30 days after the date the notice was mailed, or appeal the notice of dismissal to "the circuit court of the State of Michigan having jurisdiction within 30 days of the date of service of an appealable order."

On October 17, 2012, plaintiff received notice from the United States Department of Justice, Civil Rights Commission, that because "180 days [had] lapsed since the date the [EEOC] assumed jurisdiction over the charge, and no suit based thereon [was] filed with this Department," plaintiff still had the right to institute a civil action against defendant within 90 days of receipt of this notice.

Plaintiff filed a complaint against defendant in circuit court on April 24, 2013, alleging gender discrimination, age discrimination and retaliation under the Michigan Elliott-Larsen Civil Rights Act (CRA), MCL 37.2101 *et seq*. As a basis for her gender discrimination claim, plaintiff alleged that she was subject to disparate treatment, along with other female employees, who were required to perform ministerial tasks, when male employees were not. Plaintiff further alleged that she was not promoted to the position of apprentice lineman because she was not provided with the same training as the other male apprentice, Jake Lewis. Plaintiff also alleged that she was harassed with unwelcomed comments and conduct that were offensive and targeted toward her gender and created a hostile work environment. As a basis for her age discrimination claim, plaintiff alleged that defendant failed to promote her to the position of apprentice lineman based on her age of 54 at the time of application in 2008, provided the necessary training to a younger employee, again Jake Lewis, and changed the requirements for the position after it was posted. As a basis for her retaliation claim, plaintiff alleged that defendant retaliated against her after she filed a claim against defendant with the EEOC in December 2008.

Defendant filed a motion for summary disposition under MCR 2.116(C)(7), (8), and (10). Plaintiff filed a brief in response supported by the affidavits of Terrence Webb (defendant's prior president and accounts payable clerk), Cheryl Withrow (trustee of defendant's council and council representative to defendant's department of water and light board), and William McNamara (former supervisor for defendant).

After a hearing, the trial court granted defendant's motion for summary disposition in part under MCR 2.116(C)(7) concluding that plaintiff's complaint was time barred. The court reasoned that plaintiff failed to file her claim within the stated 90-day period after her complaint was investigated by the MDCR and that the three-year period of limitations related to injuries to persons or property, MCL 600.5805, was inapplicable.

The trial court also granted defendant's motion for summary disposition under MCR 2.116(C)(8) and (10), concluding that

> the arguments presented by the Plaintiff . . . are either unsupported by the facts or are conclusory in nature. The Plaintiff was awarded the Apprentice Lineman's position, and within 60 days tendered her letter seeking to return to her former position per her contract for those reasons noted above. The record provided to the Court reveals the extent [defendant] went to investigat[e] Plaintiff's claim both by [defendant] and an independent review, were found to be without merit. . . . This Court is unable to find either a valid and supportable claim that may be established by the Plaintiff, or a genuine issue on which the Plaintiff can support her position.

Plaintiff now seeks relief from this Court.

## II. STATUTE OF LIMITATIONS

Plaintiff first argues that the trial court erred by granting defendant's motion for summary disposition under MCR 2.116(C)(7) based on a finding that she filed her complaint outside the period of limitations. We agree.

### A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Waltz v Wyse*, 469 Mich 642, 647; 677 NW2d 813, reh den 470 Mich 1204 (2004). "Under MCR 2.116(C)(7), summary disposition is proper when a claim is barred by the statute of limitations. In determining whether summary disposition was properly granted under MCR 2.116(C)(7), this Court consider[s] all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them." *Id.* at 647-648 (quotation marks and citation omitted; alteration in text). Issues of statutory interpretation, like the interpretation of the CRA, are questions of law that this Court also reviews de novo. *Krohn v Home-Owners Ins Co*, 490 Mich 145, 155; 802 NW2d 281 (2011).

### B. ANALYSIS

At issue in this case is which limitation period applies to plaintiff's claims. Plaintiff argues that her case is governed by the three-year period of limitations applicable to actions to recover damages for injury to a person, MCL 600.5805(10). The trial court applied the 90-day limitation period set forth by the EEOC and the MDCR for appealing the dismissal of her charges. We find that the trial court erred.

Contrary to the trial court's conclusion, the appropriate period of limitation is three years. MCL 600.5805(10) provides:

> Except as otherwise provided in this section, the period of limitations is 3 years after the time of the death or injury for all actions to recover damages for the death of a person, or for injury to a person or property.

The CRA in part prohibits an employer from discriminating against an employee or an individual in an apprenticeship or training program on the basis of sex or age with respect to a term, condition, or privilege of employment. MCL 37.2202(1); MCL 37.2205. The CRA also prohibits retaliation or discrimination because the person made a charge, filed a complaint, or opposed a violation of the act. MCL 37.2701. A person alleging a violation of the act may bring a civil action for damages in the circuit court for the county where the alleged violation occurred, or for the county where the person against whom the civil complaint is filed resides or has his principal place of business. MCL 37.2801(1) and (2). The CRA "shall not be construed to diminish the right of a person to direct or immediate legal or equitable remedies in the courts of the state." MCL 37.2803.

> When interpreting a statute,
>
> [t]he primary goal of statutory interpretation is to ascertain the legislative intent that may reasonably be inferred from the statutory language. The first step in that determination is to review the language of the statute itself. Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used. We may consult dictionary definitions to give words their common and ordinary meaning. When given their common and ordinary meaning, the words of a statute provide the most reliable evidence of its intent[.] [*Spectrum Health Hosp v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 515; 821 NW2d 117 (2012) (quotation marks, citation and alteration omitted).]

"[S]tatutes must be read as a whole and in context[.]" *Cichewicz v Salesin*, 306 Mich App 14, 25; 854 NW2d 901 (2014). "[A]lthough only an aid to interpretation, [this Court has noted] that the maxim *expressio unius est exclusio alterius* (the expression of one thing suggests the exclusion of all others) means that the express mention of one thing in a statutory provision implies the exclusion of similar things." *Id*. at 33 (quotation marks and citation omitted).

In *Garg v Macomb Co Community Mental Health Servs*, 472 Mich 263, 270; 696 NW2d 646 (2005), amended on den of reh 473 Mich 1205 (2005), the plaintiff filed an action in July 1995 under the CRA, claiming she was denied a promotion and treated poorly due to her national origin. She further claimed that both actions were in retaliation for filing a union grievance in

-4-

June 1987 in which she claimed national-origin discrimination and that she opposed sexual harassment in the workplace. The defendant's retaliatory conduct took place over an eleven-year period, including acts that occurred after she filed the CRA action in July 1995. In applying the three-year period of limitations to the plaintiff's claim, our Supreme Court noted that "it is appropriate . . . in discrimination cases [to] turn to federal precedent for guidance in reaching [its] decision." *Garg*, 472 Mich at 278 (quotation marks and citation omitted; first alteration in original). However, "[w]hile federal precedent may often be useful as guidance in this Court's interpretation of laws with federal analogues, such precedent cannot be allowed to rewrite Michigan law." *Id*. at 283. The Court rejected application of the continuing violations doctrine, which allows complainants filing federal Title VII violations claims to recover damages for discriminatory acts beyond those that occurred within the 180-day period from which the claim must be filed with the EEOC, to actions filed under the CRA. The Court concluded that "a person must file a claim under the [CRA] within three years of the date his or her cause of action accrues, as required by [MCL 600.5805(10)]." *Garg*, 472 Mich at 284.

While the *Garg* decision did not consider whether the specified filing limits stated in right-to-sue letters or dismissal of claim letters issued by either the EEOC or MDCR trump the period of limitation in MCL 600.5805(10), it is instructive that our Supreme Court was clear in that the three-year period of limitations in MCL 600.5805(10) applies to persons filing a claim under the CRA, which is the claim filed by plaintiff in this case on April 24, 2013, in Luce Circuit Court. Further, while the CRA does not specify the period in which an action must be filed if the Department of Civil Rights dismisses a person's charge without a hearing, it does specify that if the commission holds a hearing and determines that the employer did or did not engage in a discriminatory practice prohibited by the CRA, it shall state its finding of fact and conclusions of law and issue a final order dismissing the complaint, MCL 37.2604; MCL 37.2605(1). If the commission issues a final order following a hearing, the complainant and the respondent have a right to appeal the decision to the appropriate circuit court within 30 days of the final order of the commission. MCL 37.2606(1). By limiting the time in which an appeal may be filed in the circuit court following a hearing and final order and decision of the commission, it implies that such limitations are not applicable to a dismissal issued after plaintiff withdrew her complaint and/or requested a right-to-sue letter from the EEOC. *Salesin*, 306 Mich App at 33. Moreover, "[i]t is a well-established rule of statutory construction that this Court will not read words into a statute." *Byker v Mannes*, 465 Mich 637, 646-647; 641 NW2d 210 (2002). Allowing the Department of Civil Rights to alter the three-year period of limitation in this situation for filing a discrimination claim under the CRA would read language into the plain text of the statute that does not exist. Specifically, it would impose a claim-filing requirement on an individual who exercises his or her right to file a charge with the Department of Civil Rights even though a full hearing and decision on the merits did not occur. Thus, the trial court erred by granting defendant summary disposition under MCR 2.116(C)(7).

Defendant erroneously claims that plaintiff filed her claim in the wrong court—that on the basis of the EEOC letter sent to her on August 2, 2012, which found no merit in her charge, she was required to file her claim in the United States District Court within 90 days of receiving the notice. However, the charge of discrimination filed in the EEOC alleged discrimination "in violation of Title VII of the Civil Rights Act of 1964, as amended [42 USC 2000e, *et seq*.]". The claim filed in the trial court in this case alleges a violation of the CRA, which provides that a person alleging a violation of the act may bring a civil action for damages in the circuit court for

-5-

the county where the alleged violation occurred, or for the county where the person against whom the civil complaint is filed resides or has his principal place of business. MCL 37.2801(1) and (2). We are unaware of any authority that allows the EEOC's dismissal of a Title VII claim to control where plaintiff may file her CRA claim, and defendant does not cite any supporting authority for this assertion.

Finally, defendant's 2008 accrual-date argument is also misplaced. Although plaintiff mentions defendant's failure to promote her to the apprentice lineman position in her complaint, the allegation was made in relation to defendant providing Lewis the necessary hours to accomplish the position but not her. Further, plaintiff states in her appeal brief that the alleged discrimination and retaliation complaint arise out of events that occurred after the date she was appointed to the apprentice lineman position, or December 22, 2010. Because plaintiff filed the instant action on April 24, 2013, her complaint was timely in that she filed it within the prescribed three-year period of limitation from the date of accrual. MCL 600.5805(10).

## III. MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT

Plaintiff next argues that the trial court erred in summarily dismissing her claims of age and sex discrimination against defendant under the CRA. The CRA provides in part that an employer may not discriminate against an individual with respect to his or her age or sex. MCL 37.2202(1)(a). As to plaintiff's individual claims of age and sex discrimination, we agree in part and disagree in part.

## A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Jimkoski v Shupe*, 282 Mich App 1, 4; 763 NW2d 1 (2008).[2] In addition,

> [a] motion brought under MCR 2.116(C)(10) tests the factual support for a claim. The pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties must be considered by the court when ruling on a motion brought under MCR 2.116(C)(10). When reviewing a decision on a motion for summary disposition under MCR 2.116(C)(10), this Court must consider the documentary evidence presented to the trial court in the light most favorable to the nonmoving party. A trial court has properly granted a motion for summary disposition under MCR 2.116(C)(10) if the affidavits or other

---

[2] The trial court granted summary disposition of plaintiff's discrimination claims under both MCR 2.116(C)(8) (failure to state a claim) and (C)(10) (no genuine issue of material fact). In deciding the motion, however, the trial court considered documentary evidence outside the pleadings, and it is therefore assumed the motion was decided only under MCR 2.116(C)(10). Cf. *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012) (concluding that if a party moves for summary disposition under multiple subrules and the trial court rules on the motion without specifying the subrule under which it decides an issue and considers documentary evidence beyond the pleadings, this Court reviews the decision as if it were based on MCR 2.116(C)(10)).

documentary evidence show that there is no genuine issue in respect to any material fact and the moving party is entitled to judgment as a matter of law. [*American Home Assurance Co v Michigan Catastrophic Claims Ass'n*, 288 Mich App 706, 716-717; 795 NW2d 172 (quotation marks and citations omitted).]

B. ANALYSIS

"Proof of discriminatory treatment in violation of the CRA may be established by direct evidence or by indirect or circumstantial evidence. In cases involving direct evidence of discrimination, a plaintiff may prove unlawful discrimination in the same manner as a plaintiff would prove any other civil case." *Sniecinski v Blue Cross & Blue Shield of Michigan*, 469 Mich 124, 132; 666 NW2d 186 (2003) (internal citations omitted). "Direct evidence" in the context of a CRA claim, is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001) (quotation marks and citation omitted).

In a case where direct evidence is lacking, a plaintiff must establish a prima facie case of age discrimination by proving that "1) she was a member of the protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by a younger person." *Lytle v Malady*, 458 Mich 153, 177; 579 NW2d 906 (1998).

When there is no direct evidence of sex discrimination, a plaintiff must establish a prima facie case by proving that "she was a member of a class entitled to protection under the statute and that, for the same or similar conduct, she was treated differently than a man. The crux of a sex discrimination case is that similarly situated persons have been treated differently because of their sex." *Marsh v Dept of Civil Serv*, 173 Mich App 72, 79; 433 NW2d 820 (1988).

If plaintiff establishes a prima facie case of discrimination based upon either age or sex, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for the adverse employment action taken. *Hazle*, 464 Mich at 463–464. "There is no exhaustive list of what constitutes adverse employment actions. And what might constitute an adverse employment action in one employment context might not be actionable in another employment context." *Chen v Wayne State Univ*, 284 Mich App 172, 201; 771 NW2d 820 (2009) (internal citations omitted). " '[T]ermination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation' " have all been recognized as adverse employment actions. *Wilcoxon v Minnesota Min & Mfg Co*, 235 Mich App 347, 363; 597 NW2d 250 (1999) quoting *Kocsis v Multi-Care Mgt, Inc*, 97 F3d 876, 886 (CA 6, 1996) quoting *Crady v Liberty Nat'l Bank & Trust Co*, 993 F2d 132, 136 (CA 7, 1993). To prevail on the claim, a plaintiff must then present evidence that the explanation provided by his or her employer constituted a pretext for discrimination. *Hazle*, at 465–466.

A plaintiff can establish that a defendant's articulated legitimate, nondiscriminatory reasons are pretexts (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they

were jointly insufficient to justify the decision. [*Feick v Monroe Co,* 229 Mich App 335, 343; 582 NW2d 207 (1998).]

In cases of both direct and indirect evidence, "a plaintiff must establish a causal link between the discriminatory animus and the adverse employment decision." *Sniecinski,* 469 Mich at 134-135.

## 1. DIRECT EVIDENCE OF AGE AND SEX DISCRIMINATION

Plaintiff presented direct evidence of age discrimination. The evidence plaintiff presented for her discrimination claim was that her direct supervisor, foreman Perry, said:

> You know . . . you're in your 50s now. And by the time you go through school, if you go through the school, you'll be in your mid 50s. Do you think you'll be able to climb a pole then?

Plaintiff argues that Perry's specified comment constitutes direct evidence of ageism such that summary disposition should not have been granted. We agree. Perry did not deny that he referenced plaintiff's age in relation to her ability to climb. Perry testified at his deposition that he said:

> I believe [sic] that conversation I might have said how are you going to climb when you're 60 figuring that she might be so at that time. Just a ballpark figure. And, you know, said, "Hopefully I'm not climbing when I'm 60."

Perry admitted that he thought age was a relevant consideration due to the physicality of the job. Perry also admitted that plaintiff was qualified for the apprentice lineman position. Perry further testified that he "was suggesting if she [plaintiff] didn't start learning to climb she isn't going to be able to." Plaintiff claims that she did not receive the training or hours she needed to advance in the apprentice lineman program because of her age and submitted evidence that she was given fewer hours of training than the male apprentice, Lewis. Plaintiff submitted Holmes's deposition testimony that a meeting with Perry, Lewis and plaintiff was held before her entry into the apprenticeship in which Perry was informed that plaintiff was to receive the same amount of training hours as Lewis. Perry's deposition testimony included an admission that he did not begin to give plaintiff training hours until "two months or so" after she was given the apprentice lineman position. In sum, plaintiff presented sufficient direct evidence to preserve the material question of fact as to whether age was at least a motivating factor in Perry's actions not to offer plaintiff the required training.

Relevant to the same argument, we cannot conclude that Perry's comment to plaintiff was a stray remark under *Krohn v Sedgwick James of Mich, Inc,* 244 Mich App 289, 292; 624 NW2d 212 (2001). In determining whether a comment is a stray remark, this Court considers:

> (1) whether the alleged discriminatory remarks were made by the person who made the adverse employment decision or by an agent of the employer that was uninvolved in the challenged decision, (2) whether the alleged discriminatory remarks were isolated or part of a pattern of biased comments, (3) whether the alleged discriminatory remarks were made in close temporal proximity to the

challenged employment decision, and (4) whether the alleged discriminatory remarks were ambiguous or clearly reflective of discriminatory bias. [*Michigan Dept of Civil Rights ex rel Burnside v Fashion Bug of Detroit*, 473 Mich 863, 867; 702 NW2d 154 (2005).].

The remark in this case was made by plaintiff's direct supervisor who was responsible for providing her with training hours. The remark, although only said once, was not isolated given that Perry admitted that age was a relevant consideration in plaintiff's ability to climb. The remark was made during training while plaintiff was in the apprentice lineman program. Last, Perry's remark was not ambiguous. He made a direct correlation between plaintiff's age and whether she could perform the required training.

Plaintiff also presented direct evidence that she was denied training and equipment and that she was assigned additional tasks because of her sex.

"The proper recourse for conduct or communication that is gender-based, but not sexual in nature, is a sex-discrimination claim.[]" *Haynie v Michigan*, 468 Mich 302, 304 n 2; 664 NW2d 129 (2003).

Plaintiff is correct that Lewis received more electrical hours training than she did for the period she worked as an apprentice lineman; specifically, she worked 199.8 hours while Lewis received 407 hours during the same period. Plaintiff and Lewis were similarly situated. They were both apprentice lineman in the apprentice lineman program working toward the position of journeyman lineman, albeit Lewis entered the program before plaintiff and had completed certain portions of the program before plaintiff's entry into the program. The program was made up of a series of steps with each step being completed by obtaining a certain number of electrical training hours. It is true that Lewis had already completed climbing school and had more hours than plaintiff when plaintiff entered the program; however, Holmes's deposition testimony was that while plaintiff and Lewis might not be able to do the same type of tasks, "they could have equal hours in electric toward certification." As mentioned earlier, Holmes held a meeting with Perry and others in December 2010 to direct that plaintiff receive equal hours. Holmes admitted, however, that she did not follow-up to determine whether plaintiff was receiving equal hours.

The record supports a finding that the difference in hours was due to plaintiff's protected status as a female. Plaintiff submitted affidavits to support this claim. Specifically, Webb stated that plaintiff "did not receive the same training for other duties as the male employees were[,]" that "current male employees disallowed [plaintiff] from operating the skid-steer, front-end loader and other machinery[,] and that he believed she was treated in that manner because of her gender." Withrow stated that she had "personal knowledge that [plaintiff] was not provided with the same training as other male employees." McNamara stated that he "ha[s] personal knowledge that [plaintiff] wanted to be trained to run the generator and that Mr. Perry refused to train her." Adverse employment actions include diminished material responsibilities. *Peña v Ingham Co Rd Comm*, 255 Mich App 299, 312; 660 NW2d 351 (2003). Collectively, the affidavits provide evidence that plaintiff requested and was denied training on specific machinery by male employees of the defendant and that her direct supervisor Perry supported the refusal to train her. *Id*. at 371-372.

Plaintiff also presented direct evidence that she was not provided with the proper equipment to perform her job whereas male employees were. Plaintiff presented Webb's affidavit in support. Webb averred that plaintiff was not given the proper equipment to perform her job and that in winter of 2012 to 2013, plaintiff did not receive requested "certain cold weather equipment" until Webb twice requested that plaintiff's supervisor at the time, Eric Buckler, order it. Webb further averred that, "male employees were not required to jump through [such] hoops." This is competent evidence that plaintiff was treated differently from her male counterparts as it relates to, at least, cold weather gear. This Court has previously recognized that restricting plaintiff's ability to do her job properly is an adverse employment action. See *Chen*, 284 Mich App at 202.

Plaintiff also presented direct evidence that she was assigned to perform administrative tasks that male employees were not required to perform. Plaintiff submitted Holmes's affidavit that acknowledged that plaintiff was asked on multiple occasions to fill in for administrative staff at the department of water and light. In further support of her claim, plaintiff provided Withrow's affidavit that stated that in February 2012 Withrow recommended to Holmes that a man who was recently hired as a meter reader be trained for clerk duties, like plaintiff had in the past, but Holmes said, "He's a man." Withrow further stated that Holmes hired two part-time women to perform the clerk duties "rather than train the man . . . in the position." Holmes vehemently denied telling Withrow that the new male meter reader would not be trained for clerk duties because "he's a man."

Contrary to the trial court's ruling, the affidavits plaintiff presented are not conclusory. The evidence presented in them is admissible and sufficient to survive summary disposition. The plaintiff has presented evidence that job related duties and training were determined based upon gender. While naming the specific employees would have been preferable and more persuasive, it is not required. Plaintiff also presented evidence that she was not given proper equipment, again based on her gender. Viewing the evidence in a light most favorable to plaintiff, we conclude there is a genuine issue of fact whether plaintiff was discriminated against based on her sex. This evidence, "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Hazle*, 464 Mich at 462.

## 2. INDIRECT EVIDENCE OF SEX DISCRIMINATION

Plaintiff makes three claims of sex discrimination for which there is no direct evidence and for which she fails to establish a prima facie case.

"Michigan Courts have recognized two basic theories for establishing a prima facie case of gender discrimination: showing intentional discrimination or proving disparate treatment." *Lytle*, 458 Mich at 181 n 31. Plaintiff's three claims are that she was treated differently 1) in regard to working conditions, and 2) overtime; and 3) that she was intentionally harassed based on her gender, which created a hostile working environment.

Plaintiff's first two claims are that defendant placed her in unsafe working conditions and denied her overtime because of her sex. Her direct evidence of sex discrimination is attributable to Webb who was not the supervisor or decision maker for either of these actions. Again, when

there is no direct evidence of sex discrimination, a plaintiff must establish a prima facie case by proving that "she was a member of a class entitled to protection under the statute and that, for the same or similar conduct, she was treated differently than a man." *Marsh*, 173 Mich App at 79.

Plaintiff, as a woman, was clearly a member of a protected class. As to plaintiff's unsafe working conditions claim, both parties agree that Perry ordered plaintiff to go up in a bucket with Perry at the Family Dollar Store to disconnect a temporary service, but plaintiff refused to do so. Plaintiff testified it was unsafe; Holmes testified it was not. On another occasion, both parties agree that plaintiff was given a chainsaw, but she declined to practice using the chainsaw outside of the class. Again, plaintiff cites safety concerns, asserting that the class did not include hands on training. Where plaintiff states that the failure to include such hands-on training made it unsafe for her practice, the defense witnesses disagree. This factual dispute, however, does not defeat her claim. It is the fact that plaintiff failed to provide evidence of disparate treatment that is fatal to this claim. Plaintiff did not present evidence that the other apprentice lineman or journeyman linemen, all of which were males, were not required to perform the same tasks.

Plaintiff's second claim is that defendant's failure to provide her with the same amount of overtime as male employees is evidence of sex discrimination. In support of this assertion, plaintiff presents evidence that from January 2012 to March 2014 she received only 32 hours of overtime while five other male employees received considerably more hours. Again, plaintiff's supervisor for these claims was not Webb. Plaintiff also claimed that Buckler, who was her supervisor, refused to call her for overtime. Plaintiff offers a chart that demonstrates that enumerated male employees received more overtime than she. To the contrary, Buckler testified that only qualified employees were called in for overtime when needed in a particular department. For example, in regards to one employee named on the chart, Richard Haley, a mechanic and a generator operator, who had a total 1,016 overtime hours, Buckler explained that plaintiff was not qualified to perform the jobs that Haley did. Thus, plaintiff and Haley were not similarly situated. We cannot guess or contrive arguments related to the other male employees plaintiff listed in the overtime chart. In toto, plaintiff's two claims for sex discrimination based on disparate treatment fail, and the trial court was correct to have granted summary disposition to defendant on those issues.

Plaintiff's third claim is that she was harassed in the workplace because of her sex and that the harassment created a hostile work environment. Plaintiff does not establish a prima-facie case of hostile work environment based on sex discrimination and the trial court did not legally err by granting summary disposition in favor of defendant on this claim.

Harassment based on any of the enumerated classifications in MCL 37.2202(1)(a) is an actionable offense. *Downey v Charlevoix Rd Comm'rs*, 227 Mich App 621, 626; 576 NW2d 712, app dis 586 NW2d 88 (1998). To prove a prima facie case of hostile work environment on the basis of sex (gender) discrimination,[3] a plaintiff must prove:

---

[3] Plaintiff's hostile work environment claim is based on alleged gender-based discrimination, not on allegations of sexual harassment. For purposes of this case, it is assumed that a hostile environment claim may be maintained based on conduct involving plaintiff's gender. See

(1) the employee belonged to a protected group; (2) the employee was subjected to communication or conduct on the basis of the protected status; (3) the employee was subjected to unwelcome conduct or communication on the basis of the protected status; (4) the unwelcome conduct or communication was intended to, or in fact did, interfere substantially with the employee's employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior. [*Id*. at 629.]

"[W]hether a hostile work environment was created by the unwelcome conduct [is] determined by whether a reasonable person, in the totality of circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment." *Quinto v Cross and Peters Co*, 451 Mich 358, 369; 547 NW2d 314 (1996). Conclusory allegations devoid of detail are not sufficient to permit the conclusion that there was such conduct or communication of a type or severity that a reasonable person could find that a hostile work environment existed. *Id*. at 371-372.

Plaintiff is clearly a member of a protected class because discrimination on the basis of sex is prohibited. MCL 37.2202(1)(a). To support her hostile work environment claim that she was subjected to communication, conduct or unwelcome conduct on the basis of her protected status as a female, plaintiff sets forth three examples of alleged sex discrimination that created a hostile work environment. We reject each, concluding that they are insufficient to establish that the actions occurred because she is female.

First, plaintiff alleges that defendant and its employees' reference to her as a "nuisance employee" is evidence of a hostile environment on the basis of sex discrimination. Plaintiff's support for this claim is Webb's affidavit, wherein Webb stated that plaintiff's unequal treatment claims were "brushed aside" by Holmes, and Bill Glimes department of water and light superintendent, and that those individuals referred to plaintiff as a "nuisance employee." There is no record evidence that the asserted "nuisance employee" comment was based on plaintiff's status as a female, and a reasonable person could not reach that conclusion on the evidence submitted.

Second, plaintiff argues that defendant referring to her as a "bitch" constitutes sex discrimination and is evidence of a hostile work environment. This claim is based upon hearsay. Plaintiff claimed that Ryan McNamara, a generator operator/mechanic, told her when she was a meter reader that he heard "them" call her a bitch when she left her office area. While rude, a single remark made by unknown persons is not only inadmissible, but also not of the severity that a reasonable person would find to create a hostile work environment.

---

*Quinto v Cross and Peters Co*, 451 Mich 358, 368, 368 n 6; 547 NW2d 314 (1996) (recognizing that "federal courts have held that harassing behavior based on ethnicity and age is violative of Title VII" but "assum[ing] without deciding . . . that a hostile environment claim may be maintained on conduct involving a plaintiff's gender, age, or national origin.").

Third, plaintiff testified that employees ignored her when she entered a room. She offers no remarks, admissible or circumstantial evidence upon which a connection between her gender and the behavior can be connected. Assuming this is true, such behavior while unkind and rude does not rise to the level of a hostile work environment either.

Because plaintiff is unable to prove that she was subjected to unwelcome communication or conduct based on her gender and that the unwelcome conduct or communication was intended to, or in fact did, create a hostile work environment, it is unnecessary for the Court to analyze the last element of respondeat superior.

## IV. RETALIATION

Plaintiff last argues that defendant and defendant's employees retaliated against her because she filed a charge with the EEOC, alleging that she was discriminated against when she did not receive the apprentice lineman position, and that the trial court therefore erred by granting defendant's motion for summary disposition under MCR 2.116(C)(10). We disagree.

### A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Jimkoski*, 282 Mich App at 4. MCR 2.116(C)(10) summary disposition is appropriate when "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law."

### B. ANALYSIS

The CRA prohibits two or more persons or a person from retaliating or discriminating "against a person because the person has opposed a violation of [the CRA], or because the person had made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under [the CRA]." MCL 37.2701(a). To establish a prima facie case of retaliation, a plaintiff must show:

> (1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. [*Garg*, 472 Mich at 273 (quotation marks and citation omitted).]

Applying the test, plaintiff clearly established that she engaged in a protected activity by filing a charge of discrimination with the EEOC in 2008 and by complaining to Holmes in 2010 and 2011. In addition, because defendant was involved with the investigation and entered into a conciliation agreement with plaintiff regarding the apprentice lineman position in October 2010, defendant knew of that protected activity. Plaintiff claims that the hostile work environment created by (1) hostility from her supervisors, (2) being called a nuisance employee, and (3) being denied a clerk position with the water and light department, constitute an employment action adverse to her. As discussed as part of plaintiff's hostile work environment claim, plaintiff did not present record evidence to support a conclusion that there was a hostile work environment. Plaintiff's allegations are not sufficient to permit the conclusion that there was such conduct or

communication of a type or severity that a reasonable person could find that a hostile work environment existed. *Quinto*, 451 Mich 371-372.

With regard to the third employment action—that plaintiff was denied the clerk position at the department of water and light because Holmes added a testing requirement to retaliate for plaintiff filing complaints—the record is devoid of any evidence that her failure to be awarded the position was the result of an adverse employment action. The department of water and light clerk position was posted in July 2013 two years after plaintiff's complaints to Holmes. Holmes testified that the skills necessary for the position were verified by a basic clerical test and that such testing had been required for the position in the past. Plaintiff and another female union employee (Lori Stokes) applied for the position. The other employee did not have as much seniority as plaintiff, and plaintiff refused to take the test and was not hired for the position. The mere failure to obtain a position does not elevate defendant's act to the level of a materially adverse employment action. *Peña*, 255 Mich App at 312. In addition, "there must be some objective basis for demonstrating that the change is adverse because a plaintiff's subjective impressions as to the desirability of one position over another [are] not controlling." *Id*. at 311.

Finally, because plaintiff failed to show that any of the three above employment actions were adverse to her, it is unnecessary to determine whether there was a causal connection between the protected activity and the asserted adverse employment action. *Garg*, 472 Mich at 273.

## V. CONCLUSION

We reverse the trial court's order granting summary disposition to defendant under MCR 2.116(C)(7) as to the statute of limitations and under MCR 2.116(C)(10) as to plaintiff's age discrimination claim and sex discrimination claims related to training, equipment, and assigned tasks. We affirm the trial court's order granting summary disposition to defendant under MCR 2.116(C)(10), on plaintiff's disparate treatment, hostile work environment and retaliation claims. We remand for proceedings consistent with this opinion.

/s/ Jane E. Markey
/s/ Cynthia Diane Stephens

-14-